# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| GRACO CHILDREN'S PRODUCTS INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Civil Action No. |
| v. | ) ) | 1:13-CV-01183-WBH |
| KIDS II, INC. | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF GRACO CHILDREN'S PRODUCTS INC.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL

## I. INTRODUCTION

Facilitated by the jointly requested extensions of time granted by the Court, the parties have narrowed the issues to three:

1. Information and documents related to damages as sought by Interrogatory Nos. 9 and 10, and Document Request No. 6;
2. Information and documents related to "Kids II Far East" and "Thomas Far East", entities identified by Kids II witnesses as related to Kids II; and
3. Completed production of remaining Kids II e-mails.

Graco is entitled to discovery on each of these issues.

Kids II argues that Graco's motion to compel is untimely because it was filed after the close of fact discovery,[1] or because Graco failed to meet and confer. As explained in detail in Graco's Response to Kids II's Motion to Strike and Graco's Reply in Support of Graco's Motion to Extend Discovery, fact discovery has not closed. *See generally* Dkt Nos. 67 and 66, respectively. As recognized by Kids II, Local Patent Rule 6.7 expressly provides for fact discovery to end forty-five (45) days after the Court rules on claim construction. Thus, Graco's motion is neither late nor untimely. Further, it was not Graco that failed to meet and confer – it was Kids II. Beginning on July 30, Graco repeatedly sought to meet and confer; but almost three weeks later (on August 18), Kids II claimed it was still unable to

---

[1] Kids II concedes that its timeliness argument does not apply to the first issue (damages information). See Kids II's Response at 12, n.6.

1

do so and asserted that Graco had delayed. Graco proceeded to file the instant motion. Graco's motion to compel is not untimely.

Kids II next attempts to portray Graco's motion as unnecessary in view of Kids II's offer to supplement. On the contrary, Kids II's subsequent disclosures and productions show only that it failed to make adequate discovery efforts in the first place. In the two months since Graco filed its motion to compel, Kids II has produced in excess of 7700 documents, identified ten (10) new witnesses, and expanded several of its discovery responses. While such "supplementation" may have addressed certain outstanding issues, Kids II has "provided responses only in the face of a motion to compel." *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 688 (N.D. Ga. 2009). Kids II's actions confirm the need for Graco's motion.

In an October 23, 2014 letter (*see* Exhibit A, letter from T. Levie to S. Amy)[2], Graco confirmed that the above three issues remained for determination by the Court. Kids II elected not to inform the Court that Graco had willingly withdrawn the other issues, and needlessly addressed withdrawn discovery requests. Despite Kids II's belated discovery responses, Graco submits that Kids II is still obligated provide: (1) any underlying facts relating to damages – including

---

[2] More specifically, Graco withdrew its Motion to Compel as to Interrogatory Nos. 4, 5, 6, and 7, and Document Request Nos. 7 and 21. Graco also narrowed the issues with respect to the remaining discovery requests in dispute. (*See* Ex. A, pp. 2-3.)

information of which only Kids II is aware and has possession; (2) documents from entities in which Kids II has an ownership interest and thus custody and control over documents or other information; and (3) Kids II's remaining e-mails relevant to this litigation.

## II.     ARGUMENT

### A. Kids II's "Supplementation" Does Not Excuse Its Failure To Provide Timely Discovery Responses

Although Kids II made sweeping statements regarding the "completeness" of its discovery responses,[3] Kids II also proposed that the parties use the "dead period" to "supplement" its discovery deficiencies under Rule 26(e). (S*ee*, *e.g.*, Dkt. No. 51-20 at 4; Dkt. No. 51-25 4).[4]  Rule 26(e), however, "does not forgive [Kids II's] failure to timely conduct an adequate and complete search for responsive documents." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1357 (N.D. Ga. 2012).  In other words, "it does not grant [Kids II]

---

[3] For instance, Kids II informed Graco that "[a]t the outset of this case, Kids II collected and produced its responsive documents relating to all of its playard products, not just the products containing the Dream Centre™ feature" (Dkt. No. 51-20 at 4), that "Kids II . . . has produced **all** responsive, non-privileged documents in its possession, custody, and control of which it is currently aware" (*id.* at 5-6 (emphasis added)), and that "Kids II has produced **all** non-privileged documents – relating to all of its playards – responsive to Graco's document requests . . . " (Dkt. No. 51-25 at 5 (emphasis added)). This turned out not to be the case.

[4] For reference to a specific page of a document filed with the Court's CM/ECF system, Graco cites to the page numbers the CM/ECF has applied.

a right to produce information in a belated fashion." *Id.* at 1357-58 (internal quotations omitted). Unfortunately, a motion to compel was required before Kids II conducted a complete search to discover 70% more documents than initially produced,[5] to identify ten new witnesses and to provide more complete responses to longstanding discovery requests.[6]

### B. Kids II's Arguments Regarding Outstanding Requests Fail

#### 1. Damages Facts Discovery: Kids II's Incomplete Responses to Interrogatory Nos. 9 and 10, and Document Request No. 6

Graco seeks factual information pertaining to damages. Graco requests rely on established case law, such as *Georgia-Pacific Corp. v. United States Plywood Corp.*, 381 F. Supp 1116, 1120 (SDNY 1970), which sets forth well established factual inquiries, such as the scope of and rate paid for a license for use of comparable patents; the portion of any profit that may be attributed to use of the

---

[5] In view of the volume of Kids II's latest productions, Graco asked for an identification of each location where Kids II found documents pursuant to F.R.C.P. 26(a)(1)(A)(ii).  (*See* Dkt. No. 66-7 at 2.)  Other than a reference to "archives," Kids II has thus far failed to respond to Graco's inquiry.

[6] On the day it filed its Response, Kids II served a privilege log containing seven (7) entries. Given repeated attorney client objections during several depositions of Kids II witnesses, Graco submits that such a privilege log strains credulity. Further, Kids II states that it "produced a revised and updated privilege log to Graco."  (Kids II Response, p. 23.)  Prior to October 24, 2014, however, Kids II had not produced any privilege log. Graco is unaware of any "revised" or "updated" privilege log.

4

invention; and the extent to which the infringer has used the invention. (*See* factors 2, 11 and 12.) Only *Georgia-Pacific* factor 14 calls for expert opinion.

Kids II contends that Graco "seek[s] disclosure of expert opinions and/or testimony not yet exchanged – or due to be exchanged – in this case." (Kids II Response, p. 18.)  Kids II is incorrect.  Graco does <u>not</u> seek opinion or expert testimony. Rather, Graco seeks to learn facts known to Kids II that are related to Graco's damages claims under either a reasonable royalty or a lost profits theory. For example, the facts of any licenses between Kids II and a third party relating to playards or components thereof, the margins of the accused products, Kids II's past licensing practices, are all potentially relevant to determining an appropriate measure of damages.  Such information is maintained by Kids II and is not publicly available. While Kids II (and Graco) may subsequently offer an expert damages testimony, that does not relieve Kids II of its obligation to provide the underlying facts on which such experts will testify.

Kids II cites no authority to support its position. In contrast, the relevant Advisory Committee notes to the 1993 amendment to Rule 26(a)(1)(C) specifically address damages in cases like the present:  "a party would not be expected to provide a calculation of damages which, **as in many patent infringement actions**, depends on information in the possession of another party or person."  Fed. R. Civ.

P. 26(a)(1)(C), 1993 Advisory Committee's note (emphasis added). Graco asks the Court to compel Kids II to provide the underlying facts in response to Interrogatory Nos. 9 and 10, and Document Request No. 6.

### 2. Kids II Should Produce Documents and Information From Asian Entities That Are Owned By Or Related To Kids II

Graco seeks information and documents from or regarding entities that Kids II apparently owns or are related in some way to Kids II. In particular, Graco seeks documents and information from Kids II Far East Ltd. ("Kids II FE") and Thomas Far East ("TFE").[7] Kids II contends that Kids II FE "is a separate and distinct legal entity not owned by Kids II, Inc." (Dkt. No. 66-6 at 4.)[8] Kids II has yet to address its lack of production of documents from TFE. (Graco presumes that Kids II's TFE contentions are similar to that for Kids II FE.) Kids II's contentions are belied by the testimony of its own witnesses.

Regarding Kids II FE, Stephen Burns, Kids II's Vice President of Product Development for In-Home Gear, testified that Kids II maintains a China office

---

[7] By its October 23 letter, Graco informed Kids II that issues related to Kids II FE and TFE still remain with respect to Document Request Nos. 6, 12, 13, 14, 16, 17, 18, 20, and 35. .

[8] Kids II also contends that "the burden and expense of undertaking [] a search would far outweigh the benefit of producing such documents in this case." (Dkt. No. 66-6 at 4.) Given Kids II's frequent interaction with these entities, Graco disagrees.

located in Zhong Zhan (*see* Ex. D, Burns Depo., 46:25-47:12),[9] and that there are in excess of 50 employees at Kids II FE (*see* Ex. D, Burns Depo., 81:2-4), including at least tooling engineers (*id.* at 48:19-49:1; 81:5-7); project engineers (*id.* at 47:13-17); two managers (*id.* at 83:15-84:2); a Director of Engineering for China (*id.* at 81:16-22); and Vice President of Product Development Hong Kong (*id.* at 84:9-16).  The Vice President of Product Development Hong Kong, Victor Lee, reports directly to Mr. Burns (*id.* at 84:10-16).  Further, the "Locations" page of Kids II's own website (www.kidsii.com) (*see* Ex. G) shows a Kids II Hong Kong location named "Kids II Far East Limited."  The hyperlink for the Kids II Hong Kong location redirects to a Google+ page for Kids II FE (*see* Ex. H), which shows, *inter alia*, the Kids II's logo.

     Witness testimony has further shown that Kids II FE maintains electronic files of documents (*see* Ex. D, Burns Depo., 82:16-18).  Kids II FE reviewed the tooling model, including 3-D data, related to the accused Kids II Ingenuity "Dream Centre" playards (*id.* at 47:2-48:21); Kids II FE made recommendations or requests to the tooling supplier (*id.* at 49:25-50:24), and eventually approved the tooling model (*id.* at 49:22-24; 51:5-19).  Kids II's "China lab team" was also involved in the testing phase for the accused Ingenuity "Dream Centre" playards

---

[9] Kids II informed Graco that the Zhong Zhan office is actually called Kids II FE. (*See* Dkt. No. 66-6 at 4.)

(Ex. I, Mendes Depo., 76:2-13).  Mr. Burns testified that Kids II FE possibly would have "design drawings related to the [accused] Dream Centre" (Ex. D, Burns Depo., 79:11-14).  Mr. Thomson, another Kids II witness, similarly testified that the "China engineering team" and "industrial design team" made up part of his "team" that worked on the accused Ingenuity "Dream Centre" playard (Ex. C, Thomson Depo., 121:1-122:17).  Mr. Thomson also testified that the industrial design team is "part of Kids II" (*id*. at 122:15-17), or "internal to Kids II" (*id.* at 142:16-20).  Individuals at Kids II FE appear to have been involved in the engineering pilot, production pilot, and postproduction phases of the design and development process for the accused Ingenuity "Dream Centre" playard (*id.* at 143:9-144:21).  Further, when Kids II was evaluating manufacturing capacity, a potential manufacturer would have communicated relevant information to Mr. Burns or Kids II's "staff in China" (Ex. D, Burns Depo., 96:2-21).

Regarding TFE, Mr. Burns testified that "Kids II has some ownership interest in TFE" (*id.* at 30:8-16; 158:4-10).  Mr. Burns further testified that TFE builds and manages prototypes for Kids II (*id.* at 30:2-6).  Mr. Mendes testified that TFE was one of two possible manufacturers for the accused Ingenuity "Dream Centre" playards (Ex. I, Mendes Depo., 93:14-18; *see also* Ex. E, Jackson Depo., 245:18-246:6).  Peter Jackson testified that when Kids II employees, such as Mr.

Mendes, travel to TFE, those Kids II employees are involved in "detailed engineering work" at TFE (Ex. E, Jackson Depo., 239:14-19).

Kids II's argument that Kids II FE is "a separate and distinct legal entity" – even if correct – is of no moment. Legal ownership of the requested documents is not determinative, nor is actual possession necessary if Kids II has "control" of the items.  *See*, *e.g.*, *Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90, 96 (W.D.N.Y. 2011).  The Eleventh Circuit has defined "control" to include "the legal right to obtain the documents requested upon demand."  *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).  Moreover, "[w]hether documents are in a parties' control under Rule 34 is broadly construed."  *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470-71 (S.D. Fla. 2011) ("control" does not require that a party have legal ownership or actual physical possession of documents).[10]

Based on the testimony of Kids II's own witnesses, Kids II has "control" over documents and information at both Kids II FE and TFE.[11]  As Kids II has the ability to dictate design, development and production details to Kids II FE and TFE

---

[10] *See also In re Wright*, No. 04-94519-WHD, 2005 Bankr. LEXIS 1881, at *8-9 (N.D. Ga. Aug. 5, 2005) ("Therefore, under Rule 34, control does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action.").

[11] Given Kids II's ownership interest in both Kids II FE and TFE, Graco submits that neither entity is considered a "non-party" under the *Wright* analysis.

regarding Kids II's products, surely Kids II also has the legal right to obtain the requested documents.  Graco requests that this Court compel Kids II to produce documents from Kids II FE and TFE that are responsive to Document Request Nos. 6, 12, 13, 14, 16, 17, 18, 20, and 35.

### 3.  Kids II Should Complete its Production of E-mails

Kids II argues that it does not have to produce its remaining e-mails based upon the Joint Preliminary Planning Report and Discovery Plan (Dkt No. 10). That proposal specifically cooperated with the initial disclosures requirement of Rule 26 (a)(1)(A)(ii) which, in pertinent part, states:

> [a] party must, without awaiting a discovery request, provide to the other parties:
> \*\*\*
> (ii) <u>a copy</u>—or a description by category and location – <u>of all</u> documents, <u>electronically stored information</u>, and tangible things that the disclosing party has in its possession…and may use to support its claims or defenses . . . .(Emphasis added.)

Nothing in the Preliminary Planning Report absolved either party from providing initial disclosures of electronically stored information. To the contrary, the proposal regarding emails contemplated that the parties would first provide "initial disclosures."  See Dkt No. 65 at 4-5.  The proposed Preliminary Planning Report was submitted to the Court, but was not entered by Judge Carnes.  Thus, the parties

necessarily proceeded with discovery of electronically stored information in accordance the Federal Rules of Civil Procedure.

In its First Set of Requests for Production (Nos. 1-41) ("Graco's First RFPs") (*see* Dkt. No. 51-3), Graco specifically defined the terms "document" and "documents" to "mean and include any . . . means or electronic storage of information, **such as e-mail**, that is within your possession, control, or custody." (*Id.* at 4-5 (emphasis added).)  Further, "documents" were defined to include communications, which included "electronic mail messages." (*Id.* at 3.)  Kids II did not object to the production of e-mails.  (*See* Dkt. No. 51-5.)

More than three (3) months later, on February 26, 2014, Kids II produced documents, including e-mails.  Thereafter, without objection, Graco deposed witnesses regarding some of those e-mails.  (*See*, *e.g.*, Ex. B, Thomson Depo., Ex. 15.)  Multiple Kids II witnesses testified that their computers were searched for documents, including e-mails.  (*See*, *e.g.*, Ex. C, Thomson Depo., 202:23-204-:21; Ex. D, Burns Depo., 175:22-176:18; Ex. E, Jackson Depo., 210:3-215:11.)  Kids II witnesses also testified that communications regarding the accused instrumentalities would have taken place via e-mail.  (*See* Ex. F, Tadipatri Depo., 173:19-174:2).

Graco did not have many such communications, and inquired about them. On July 16, 2014, counsel for Graco specifically informed counsel for Kids II that Kids II's production with regards to e-mails was deficient. (*See* Ex. C, Thomson Depo., 221:16-222:4.) Kids II did not respond. On July 30, 2014, Graco cited Mr. Thomson's lack of e-mails as "illustrating the deficient nature of Kids II document production." (Dkt. No. 51-15 at 5.) On July 31, Kids II indicated that it could not then address such issues. In an effort to work with Kids II, Graco withheld its motion to compel. On August 8, Graco again addressed e-mails, stating that Graco had "learned in recent weeks that there are many emails that have evidently not been produced." (Dkt. No. 67-2 at 2.) In response to <u>all</u> of those communications, Kids II said nothing regarding e-mails, instead merely advising Graco on August 11 that "Kids II has already collected and produced its responsive documents in this case." (Dkt. No. 51-20 at 4.) Graco again raised the issue and, on August 18, Kids II again made no mention of e-mails, instead stating that Kids II "searched for, collected and produced responsive documents related to all playards at the outset of this case and then duly supplemented its productions on two additional occasions." (*See generally* Dkt. No. 51-21; Dkt. No. 51-25 at 4.) On September 4, Kids II, for the first time, took the position that Graco had not properly requested e-mails.

Kids II has already produced e-mails in this litigation, thus confirming that its e-mails are properly produced either as part of its initial disclosures or in response to Graco's document requests. In fact, in response to Graco's Second Set of Requests for Production (Nos. 42-66) ("Second RFPs") (*see* 51-14), 50% of Kids II's production[12] were e-mails, thereby confirming Kids II's understanding that Graco's discovery requests properly sought e-mails.

Graco has produced in excess of 14,000 e-mails in this case. Graco has thus acknowledged and abided by its obligation to produce emails, whether produced in accordance with Rule 26(a)(1)(A)(ii) or in response to Kid II's discovery requests. In comparison, Kids II has produced selected e-mails in accordance with either Rule 26 (a)(1)(A)(ii) or Graco's discovery requests. Having effectively admitted and partially complied with its obligation to produce e-mails, Kids II should not be allowed to cherry-pick the e-mails it wants to produce. Despite Kids II's change of heart, Graco still sought to avoid unnecessary motion practice. Graco provided Kids II with a list of proposed custodians and search terms (*see* Dkt. No. 66-7 at 3-

---

[12] As set forth in n.9, *supra*, Graco has not burdened the Court with the filing of e-mails produced by Kids II in response to Graco's Second RFPs, but will be happy to accommodate the Court.

4). Even given such a directed search, [13] Kids II still refused, asserting that "fact discovery is currently closed in this case." (Dkt. No. 66-8 at 5.)

Nothing in the Preliminary Planning Report allows Kids II to produce selected emails, or excuses Kids II's failure to produce its remaining e-mails. The parties joint proposal expressly contemplated that any further e-mail production would occur <u>after</u> initial disclosures. If Kids II "may use" any e-mails to support its defenses, they should have been produced as part of its Rule 26 initial disclosures. Kids II likewise cannot excuse its failure to produce its remaining e-mails on the form of Graco's document requests. Kids II has already conceded the appropriateness of Graco's requests by producing e-mails. Moreover, the proposal set forth in the Preliminary Planning Report was not entered by the Court. Thus, Graco's requests are properly viewed through the prism of Rule 34 and there is no dispute that Graco's requests comply with Rule 34.

Kids II admits that Graco is entitled to such discovery and can obtain it once the 45 day discovery period opens under Local PR 6.7. The intent of the parties' proposal was to reduce or direct searching for additional electronic mail records, not to avoid legitimate discovery. Kids II's arguments thus run counter to that

---

[13] Kids II has informed Graco that Kids II's e-mails are maintained on "Kids II's email servers." (Dkt. No. 66-6 at 3, n.1.) Thus, Graco submits that a search of "Kids II's email servers" using the provided custodians and search terms would seem to be a streamlined and efficient process.

intent and judicial economy. Kids II's wants to play both sides of the fence. Kids II wants the benefit of Graco's complete email production while only producing limited emails to deny Graco the benefit it enjoys. Kids II's actions are counterproductive, especially given the current posture of the case and Graco's willingness to address these issues with Kids II. Accordingly, Graco requests that the Court compel Kids II to produce e-mails responsive to Graco's discovery requests, and in particular, Document Request Nos. 6, 12, 13, 14, 16, 17, 18, 20, 35, and 37.[14]

### III. CONCLUSION

For the foregoing reasons, Graco respectfully requests that the Court grant its motion to compel as to the issues set forth herein.

Respectfully submitted this 10th day of November, 2014.

> /s/ *Stephen M. Schaetzel*
> Stephen M. Schaetzel
> Georgia State Bar No. 628653
> sschaetzel@mcciplaw.com
> [continued]

---

[14] With respect to Document Request No. 37, Kids II has yet to produce any document destruction/retention/archival policy, despite a request to do so, or to confirm in writing that no such policy exists. (*See*, *e.g.*, Dkt. No. 51-15 at 7-8.) In Graco's recent letter dated October 23, 2014, Graco again requested such a representation. (*See* Ex. A, p. 3.) Under either circumstance, Graco was willing to withdraw its motion to compel with respect to Document Request No. 37. (*Id.*) Kids II has yet to respond.

                                Gregory J. Carlin
                                Georgia State Bar No. 455865
                                *gcarlin@mcciplaw.com*
                                Walter Hill Levie, III
Georgia State Bar No. 415569
*tlevie@mcciplaw.com*
David S. Moreland
Georgia State Bar No. 521998
*dmoreland@mcciplaw.com*
Anthony B. Askew
Georgia State Bar No. 025300
*taskew@mcciplaw.com*
MEUNIER CARLIN & CURFMAN, LLC
817 West Peachtree St., Suite 500
Atlanta, Georgia 30308
Telephone:  (404) 645-7700
Facsimile:  (404) 645-7707

*Counsel for Plaintiff Graco Children's Products Inc.*

16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| GRACO CHILDREN'S PRODUCTS INC., | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. |
| v. | ) ) | 1:13-CV-01183-WBH |
| KIDS II, INC. | ) ) | |
| Defendant. | ) | |

## LOCAL RULE 7.1D CERTIFICATION

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing PLAINTIFF GRACO CHILDREN'S PRODUCTS INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

Dated this 10th day of November, 2014.

/s/ *Stephen M. Schaetzel*
Stephen M. Schaetzel

17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GRACO CHILDREN'S PRODUCTS INC., | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. |
| v. | ) ) | 1:13-CV-01183-WBH |
| KIDS II, INC. | ) ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 10th day of November, 2014, the foregoing PLAINTIFF GRACO CHILDREN'S PRODUCTS INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

Dated: November 10, 2014     /s/ *Stephen M. Schaetzel*
                                                  Stephen M. Schaetzel