IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACO CHILDREN'S PRODUCTS INC.,

    Plaintiff,

    v.

KIDS II, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-1183-TWT

**OPINION AND ORDER**

This is a patent infringement lawsuit. It is before the Court on the Plaintiff Graco Children's Products Inc.'s Motion to Dismiss the Defendant Kids II, Inc.'s counterclaim for patent invalidity based on interfering subject matter [Doc. 36]. For the reasons set forth below, the Plaintiff's Motion to Dismiss [Doc. 36] is GRANTED.

**I. Background**

The Plaintiff Graco Children's Products Inc. – as its name suggests – is in the business of developing products for children, including car seats, strollers, high chairs, and play pens.[1] This case is about a particular play pen that the Plaintiff developed

---

[1] Compl. ¶ 12.

which can support a bassinet and a changing table.[2] On May 18, 2004, the Plaintiff obtained a patent for this invention – the '796 Patent[3] – from the U.S. Patent and Trademark Office ("PTO") which was entitled "combination folding play pen with changing table and bassinet."[4]

The Defendant Kids II, Inc. is also in the business of developing children's products.[5] The Defendant sells a play pen called the "InGenuity playard product," which it describes as a "play pen with a bassinet and changing table that quickly fold[s] for portability."[6] The Plaintiff brought suit against the Defendant, claiming that the InGenuity play pen infringes upon the '796 Patent.[7]

The Defendant filed an answer, and asserted three counterclaims. In particular, the Defendant seeks a declaratory judgment stating that: (1) the InGenuity play pen at issue does not infringe the '796 Patent, (2) the '796 Patent is invalid, and (3) certain claims within the '796 Patent interfere with a claim within the '329 Patent,[8] which the

---

[2]   Compl. ¶ 13.

[3]   U.S. Patent No. 6,735,796 (filed Jan. 19, 2001).

[4]   Compl. ¶ 16.

[5]   Compl. ¶ 17.

[6]   Compl. ¶ 18 (internal quotation marks omitted).

[7]   Compl. ¶ 19.

[8]   U.S. Patent No. 5,918,329 (filed Dec. 9, 1997).

Defendant was assigned the rights to. The '329 Patent covers an invention described as "[a] foldable bed which can be detachably mounted onto a crib."[9] The Plaintiff now moves to dismiss the Defendant's third counterclaim. The Plaintiff argues that, based on the allegations in the Counterclaim and the attached exhibits, the '796 Patent does not interfere with the '329 Patent.

## II. Legal Standard

A plaintiff may survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief.[10] For a claim to be plausible, the supporting factual matter must establish more than a mere possibility that the plaintiff is entitled to relief.[11] In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.[12]

---

[9] '329 Patent, at [57].

[10] See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

[11] See Iqbal, 556 U.S. at 678.

[12] See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555 (A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

### III. Discussion

An "'interfering patents' action under 35 U.S.C. § 291 permits '[t]he owner of an interfering patent [to seek] relief against the owner of another by civil action.'"[13] An "interference-in-fact" exists when "two patents claim the same or substantially the same subject matter."[14] The "first step in any interference proceeding under § 291 is the evaluation of whether an interference-in-fact exists under the two-way test."[15] The Board of Patent Appeals & Interferences illustrated the two-way test in the following manner:

> The claimed invention of Party A is presumed to be prior art vis-à-vis Party B and vice versa. The claimed invention of Party A must anticipate or render obvious the claimed invention of Party B and the claimed invention of Party B must anticipate or render obvious the claimed invention of Party A.[16]

---

will not do.") (internal quotation marks omitted).

[13] Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc., 655 F.3d 1291, 1302 (Fed. Cir. 2011); see also 35 U.S.C. § 291 (Pre-AIA) ("The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part.").

[14] Id. (internal quotation marks omitted).

[15] Medichem, S.A. v. Rolabo, S.L., 353 F.3d 928, 934 (Fed. Cir. 2003).

[16] Id.; see also Noelle v. Lederman, 355 F.3d 1343, 1351 (Fed. Cir. 2004) ("In order for an interference-in-fact to exist, invention A must anticipate or make obvious invention B, and invention B must anticipate or make obvious invention A, thereby meeting both prongs of the 'two-way' test.").

In other words, "for two claims to interfere, each claim must anticipate or render obvious the other; failure of either claim to anticipate or render obvious the other defeats the test of interfering patents."[17] This test "incorporates the standards for both anticipation under § 102 and obviousness under §103 in determining the existence of an interference, permitting either circumstance to satisfy that leg of the two-way test."[18] Both "[a]nticipation and obviousness require the court to compare the properly construed claims to the available prior art."[19] If "each and every limitation is found either expressly or inherently in a single prior art reference, then the claim is invalid under § 102 for anticipation."[20] To "establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill."[21] Additionally, "the . . . determination of obviousness under § 103 is a question of law . . . based on several underlying factual findings, including (1) the scope and

---

[17] <u>Genetics Institute</u>, 655 F.3d at 1302.

[18] <u>Medichem</u>, 353 F.3d at 934.

[19] <u>Genetics Institute</u>, 655 F.3d at 1302.

[20] <u>Id.</u> (internal quotation marks omitted).

[21] <u>In re Robertson</u>, 169 F.3d 743, 745 (Fed. Cir. 1999) (internal quotation marks omitted).

content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art; and (4) evidence of secondary factors, such as commercial success, long-felt need, and the failure of others."[22] Finally, the Court notes that section 291 actions are rare,[23] and that "each patent carries with it . . . a . . . presumption of the absence of interference."[24]

The Defendant asserts that fourteen claims in the '796 Patent interfere with Claim 1 of the '329 Patent.[25] However, most of '796 Patent claims cited by the

---

[22] In re Klein, 647 F.3d 1343, 1347 (Fed. Cir. 2011).

[23] See Mycogen Plant Sci. v. Monsanto Co., 243 F.3d 1316, 1332 (Fed. Cir. 2001) ("In rare cases, an interference between issued patents may be initiated in district court under the 'Interfering patents' section of the patent statute, which provides for a civil action in such cases."); Albert v. Kevex Corp., 729 F.2d 757, 758 (Fed. Cir. 1984) ("The third count was a type of action now rarely seen, an 'interfering patents' suit predicated on 35 U.S.C. § 291.").

[24] Xerox Corp. v. Nashua Corp., 314 F. Supp. 1187, 1190 (S.D.N.Y. 1970) (internal quotation marks omitted); see also Cherdak v. Vock, No. 1:11-CV-1311, 2012 WL 1427847, at *3 (E.D. Va. Apr. 23, 2012) ("The Plaintiff carries a high burden when establishing interference-in-fact, and there is a presumption that patents are not interfering, particularly when the prior art before the court was also before the PTO examiner.").

[25] Def.'s Countercl. ¶ 35 (The Plaintiff asserts that Claims 1, 2, 3, 9, 14, 15, 17, 18, 19, 20, 31, 32, 34 and 35 of the '796 Patent interfere with Claim 1 of the '329 Patent.).

Defendant are dependent on Claims 1, 17, and 18 of the '796 Patent.[26] Consequently, the Court – much like the parties – will focus on the latter three claims.

However, before addressing the particular claims, the Court makes note of two problems underlying many of the Defendant's arguments. First, the Defendant appears to believe that it may satisfy a leg of the two-way test by showing that some elements of a patent claim are anticipated by the allegedly interfering claim, while the remaining elements are rendered obvious by the allegedly interfering claim. This is not so. The Defendant must show that a particular claim is either *wholly* anticipated by,[27] or *wholly* rendered obvious by, the allegedly interfering claim.[28] Second, although a finding of either obviousness or inherent anticipation must be based on factual findings, the Counterclaim is nearly devoid of factual allegations supporting the Defendant's interference counts. Indeed, the Defendant frequently relies on factual assertions found only in its Brief. However, because these allegations are not found

---

[26] Def.'s Resp. Br., at 19-21, 25.

[27] See In re Skvorecz, 580 F.3d 1262, 1266 (Fed. Cir. 2009) ("Anticipation requires that *all* of the claim elements and their limitations are shown in a single prior art reference.") (emphasis added).

[28] See Application of Glass, 347 F.2d 604, 606 (C.C.P.A. 1965) ("[O]bviousness under 35 U.S.C. § 103 . . . require[s] . . . [a] determin[ation] [of] whether . . . the subject matter defined by the . . . claims would have been obvious, as a whole, to a person having ordinary skill in this art at the time the invention was made (here the filing date).").

in the Counterclaim, the Court need not consider them. With this, the Court now turns to the allegedly interfering claims.

### A. Claim 1

The following is a side-by-side comparison of Claim 1 of the '796 Patent and Claim 1 of the '329 Patent:

| Claim 1 ('796 Patent) | Claim 1 ('329 Patent) |
|---|---|
| A play pen, bassinet assembly, and changing table assembly combination, comprising: [1] a play pen having an upper frame assembly; [2] a bassinet assembly removably supported on said upper frame assembly; and [3] a changing table assembly removably supported on said upper frame assembly in side-by-side relationship to said bassinet assembly, said changing table assembly including a changing table surface locatable within a perimeter defined by said upper frame assembly.[29] | A foldable bed detachably mounted onto a crib comprising: [1] a main frame detachably mounted onto the crib and having *two couplers pivotally connected thereto* for folding said main frame in a mirror image manner and at least one joint securely mounted on one side thereof and a *fabric casing* securely attached thereto; and [2] a second frame pivotally connected with said main frame by means of said joint and having *at least two U shaped rods* pivotally connected with each other by means of two foldable devices and a fabric mat securely attached thereto.[30] |

Here, Claim 1 of the '796 Patent does not anticipate or render obvious Claim 1 of the '329 Patent, and so one leg of the two-way test is not met. To begin, Claim

---

[29]   '796 Patent col. 7 ll. 24-33.

[30]   '329 Patent col. 4 ll. 16-28 (emphasis added).

1 of the '796 Patent does not anticipate Claim 1 of the '329 Patent because at least three elements in the latter are not found in the former: (1) the "two couplers pivotally connected" within the main frame so that it may be folded in half; (2) the fabric casing attached to the main frame; and (3) the "two U shaped rods pivotally connected with each other by means of two foldable devices" found within the second frame. In its Brief, the Defendant appears to admit that, at the very least, the element concerning the "two couplers pivotally connected" is not found – either expressly or inherently – in Claim 1 of the '796 Patent.[31] Additionally, the Defendant's arguments for why the other two referenced elements are anticipated are unpersuasive. For example, the Defendant argues that the fabric casing is "inherent" in Claim 1 of the '796 Patent, and that this is a matter of "common sense."[32] There is no explanation behind this conclusory assertion. As the Plaintiff points out, "not all changing tables must necessarily be constructed of fabric,"[33] and the Counterclaim contains no specific allegations suggesting otherwise. In addition, the Defendant argues that the "two U shaped rods" are anticipated because Claim 1 of the '796 Patent calls for a rectangular frame around the changing table, and the two U-shaped rods would also form a

---

[31] The Defendant only argues that the "two couplers pivotally connected" element is rendered obvious by Claim 1 of the '329 Patent. Def.'s Resp. Br., at 14-16.

[32] Def.'s Resp. Br., at 14.

[33] Pl.'s Reply, at 10.

rectangular frame when connected.[34] Even if this were true, Claim 1 of the '796 Patent does not call for a rectangular frame formed by joining two U-shaped rods. Thus, that particular element is not anticipated. Additionally, the Defendant makes no argument for why Claim 1 of the '329 Patent, *as a whole*, is rendered obvious by Claim 1 of the '796 Patent. Accordingly, one leg of the two-way test is not met and so the two claims do not interfere.[35]

### B. Claim 17

The following is a side-by-side comparison of Claim 17 of the '796 Patent and Claim 1 of the '329 Patent:

---

[34]   Def.'s Resp. Br., at 17.

[35]   Claims 2, 3, 9, 14, 15, 34, and 35 are, according to the parties, dependent on Claim 1 of the '796 Patent. Thus, there is no interference between those claims and Claim 1 of the '329 Patent.

| **Claim 17 ('796 Patent)** | **Claim 1 ('329 Patent)** |
|---|---|
| A play pen and bassinet assembly combination, comprising: [1] a play pen having first and second upper side rail assemblies in spaced apart disposition and a collapsible joint at a medial portion of each of said upper side rail assemblies; and [2] a bassinet assembly adapted to be removably supported on said upper side rail assemblies, said bassinet assembly including: a pair of bassinet frame assemblies including a first bassinet frame assembly adapted to be supported on said first upper side rail assembly and a second bassinet frame assembly adapted to be supported on said second upper side rail assembly, each of said bassinet frame assemblies being supportable on said respective collapsible joint; and [3] a bassinet enclosure supported on said pair of bassinet frame assemblies.[36] | A foldable bed detachably mounted onto a crib comprising: [1] a main frame detachably mounted onto the crib and having two couplers pivotally connected thereto for folding said main frame in a mirror image manner and at least one joint securely mounted on one side thereof and a fabric casing securely attached thereto; and [2] a second frame pivotally connected with said main frame by means of said joint and having at least two U shaped rods pivotally connected with each other by means of two foldable devices and a fabric mat securely attached thereto.[37] |

Here, Claim 17 of the '796 Patent does not anticipate or render obvious Claim 1 of the '329 Patent. The Defendant admits that there is no anticipation because Claim 17 of the '796 Patent does not include a second frame in addition to the bassinet, whereas Claim 1 of the '329 Patent has two adjacent frames; one presumably used as

---

[36]     '796 Patent col. 8 ll. 45-62.

[37]     '329 Patent col. 4 ll. 16-28.

a bassinet, the other as a changing table. The Defendant argues, however, that "it would have been quite obvious to one of ordinary skill in the art to add a changing table to the claimed subject matter of Claim 17."[38] But there are no factual allegations in the Counterclaim which may underlie a finding of obviousness. To support its argument, the Defendant simply asserts that "the '796 Patent discloses such an arrangement in all of the *other independent claims*, discusses the structure and motivation for such an arrangement throughout the specification."[39] But the question here is whether *Claim 17* of the '796 Patent renders Claim 1 of the '329 Patent obvious.[40] Because the Defendant fails to explain how it does, one leg of the two-way test is not met, and so the two claims do not interfere.

### C. Claim 18

The following is a side-by-side comparison of Claim 18 of the '796 Patent and Claim 1 of the '329 Patent:

---

[38] Def.'s Resp. Br., at 23.

[39] Def.'s Resp. Br., at 23.

[40] See Yorkey v. Diab, 605 F.3d 1297, 1300 (Fed. Cir. 2010) ("An interference exists if the subject matter of *a claim* of one party would, if prior art, have anticipated or rendered obvious the subject matter of *a claim* of the opposing party and vice versa.") (citing 37 C.F.R. § 41.203(a)) (emphasis added).

| **Claim 18 ('796 Patent)** | **Claim 1 ('329 Patent)** |
|---|---|
| A play pen comprising: [1] an upper frame assembly having a *long axis*; [2] a bassinet assembly removably supported on said upper frame assembly, said bassinet assembly having a *long axis*; and [3] a changing table assembly removably supported on said upper frame assembly, said changing table assembly having a *long axis*, wherein the *long axes* of said bassinet assembly and said changing table assembly are perpendicular to the long axis of said upper frame assembly.[41] | A foldable bed detachably mounted onto a crib comprising: [1] a main frame detachably mounted onto the crib and having two couplers pivotally connected thereto for folding said main frame in a mirror image manner and at least one joint securely mounted on one side thereof and a fabric casing securely attached thereto; and [2] a second frame pivotally connected with said main frame by means of said joint and having at least two U shaped rods pivotally connected with each other by means of two foldable devices and a fabric mat securely attached thereto.[42] |

Here, Claim 1 of the '329 Patent does not anticipate or render obvious Claim 18 of the '796 Patent. To begin, Claim 1 of the '329 Patent does not anticipate Claim 18 of the '796 Patent because the former does not state that the main frame and the second frame have "*long* axes," as required by the latter, and "[a]nticipation cannot be found . . . if *any* claimed element or limitation is not present in the reference."[43] Further, the Defendant makes no argument for how Claim 1 of the '329 Patent renders Claim 18 of the '796 Patent to be obvious. Additionally, given the similarities between

---

[41]   '796 Patent col. 8 ll. 63-67, col. 9 ll. 1-6 (emphasis added).

[42]   '329 Patent col. 4 ll. 16-28.

[43]   In re Skvorecz, 580 F.3d 1262, 1268 (Fed. Cir. 2009) (emphasis added).

Claims 1 and 18 of the '796 Patent – the only material difference is that the latter calls for "long axes" – Claim 18 of the '796 Patent, like Claim 1 of the '796 Patent, does not anticipate or render obvious Claim 1 of the '329 Patent. Accordingly, neither leg of the two-way test is satisfied, and so the two claims do not interfere.[44]

## IV. Conclusion

For these reasons, the Court GRANTS the Plaintiff's Motion to Dismiss the Defendant Kids II, Inc.'s counterclaim for patent invalidity based on interfering subject matter [Doc. 36].

SO ORDERED, this 24 day of February, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[44] Claims 19, 20, 31, and 32 are dependent on Claim 18 of the '796 Patent. Thus, there is no interference between those claims and Claim 1 of the '329 Patent.