IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACO CHILDREN'S PRODUCTS INC.,

    Plaintiff,

      v.

KIDS II, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-1183-TWT

## OPINION AND ORDER

This is a patent infringement lawsuit. It is before the Court for a Claims Construction Order regarding four disputed claim terms in U.S. Patent No. 6,735,796 ("the '796 Patent").

## I. Background

The Plaintiff Graco Children's Products, Inc. ("Graco") is a manufacturer of children's products. It is seeking to enforce its rights under a patent for an infant play pen. Specifically, the '796 Patent describes a combination folding play pen with a bassinet and changing table that are removable. The Defendant Kids II, Inc. is also a manufacturer of children's products, including play pens. Kids II seeks a narrower

construction of three of the disputed terms and contends that one of the disputed terms
is indefinite.

## II. Legal Standard

The construction of claims in a patent case is a matter of law for the Court.[1]  In
construing patent claims, the Court looks first to the intrinsic evidence.  The intrinsic
evidence consists of the patent itself, the claim terms, the specification (or written
description), and the patent prosecution history, if in evidence.[2]  However, not all
intrinsic evidence is equal.[3] First among intrinsic evidence is the claim language.[4] A
"bedrock principle" of patent law is that the claims of the patent define the patentee's
invention.[5] Thus, the Court's focus must "begin and remain centered on the language
of the claims themselves, for it is that language that the patentee chose to use to
particularly point out and distinctly claim the subject matter which the patentee

---

[1]      Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

[2]      Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1346 (Fed. Cir.
2004).

[3]      Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir.
1998).

[4]      Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed.
Cir. 1999).

[5]      Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

regards as his invention."[6] When reading claim language, terms are generally given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention.[7]

As a result, an objective baseline from which to begin claims construction is to determine how a person of ordinary skill in the relevant art would understand the terms.[8] Although "the claims of the patent, not its specifications, measure the invention,"[9] the person of ordinary skill in the art is deemed to read the claim terms in the context of the entire patent, including the specification, rather than solely in the context of the particular claim in which the disputed term appears.[10]  For instance, the patentee may act as his own lexicographer and set forth a special definition for a claim term.[11]

---

[6]      Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1370 (Fed. Cir. 2005) (quoting Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001)); see also Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) ("The written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims.").

[7]      Phillips, 415 F.3d at 1313-14.

[8]      Id. at 1313.

[9]      Smith v. Snow, 294 U.S. 1, 11 (1935).

[10]      Phillips, 415 F.3d at 1313.

[11]      Id. at 1316.

Claims are part of a "fully integrated written instrument" and, therefore, "must be read in view of the specification, of which they are a part."[12]   In fact, the specification is "the single best guide to the meaning of a disputed term" and is often dispositive.[13] "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims."[14] Nevertheless, the Court must be careful not to read a limitation into a claim from the specification.[15] In particular, the Court cannot limit the invention to the specific examples or preferred embodiments found in the specification.[16] In addition to the specification, the prosecution history may be used to determine if the patentee limited the scope of the claims during the patent prosecution.[17] The

---

[12]   Id. at 1315.

[13]   Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

[14]   Id. at 1317.

[15]   Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 904 (Fed. Cir. 2004).

[16]   Phillips, 415 F.3d at 1323; see also Resonate Inc. v. Alteon Websystems, Inc., 338 F.3d 1360, 1364-65 (Fed. Cir. 2003) ("[A] particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment.").

[17]   Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995).

prosecution history helps to demonstrate how the patentee and the Patent and Trademark Office ("PTO") understood the patent.[18] However, because the prosecution history represents the ongoing negotiations between the PTO and the patentee, rather than a final product, it is not as useful as the specification for claim construction purposes.[19]

Extrinsic evidence – such as expert and inventor testimony, dictionaries, and learned treatises – is only considered when the claim language remains genuinely ambiguous after considering all of the patent's intrinsic evidence.[20]   Although less reliable than the patent and prosecution history in determining construction of claim terms, extrinsic evidence may be used to help the Court understand the technology or educate itself about the invention.[21] In particular, because technical dictionaries collect accepted meanings for terms in various scientific and technical fields, they can be useful in claim construction by providing a better understanding of the underlying technology and the way in which one skilled in the art might use the claim terms.[22]

---

[18]      Phillips, 415 F.3d at 1317.

[19]      Id.

[20]      Tegal Corp. v. Tokyo Electron America, Inc., 257 F.3d 1331, 1342 (Fed. Cir. 2001).

[21]      Phillips, 415 F.3d at 1317; Vitronics Corp., 90 F.3d at 1584.

[22]      Phillips, 415 F.3d at 1318.

But extrinsic evidence, including dictionary definitions, cannot be used to vary or contradict the terms of the patent claims.[23]

### III. Discussion

### A. "upper frame assembly"

The parties first dispute the meaning of the phrase "upper frame assembly." Kids II contends that it means "a collection of interconnected parts that define the upper perimeter of the playard." Graco argues that no construction is necessary because the phrase is sufficiently clear. If a construction is necessary, Graco asserts that the phrase means "frame assembly above a midway point." The Court finds that a construction is necessary. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement."[24] "[W]hen a district court concludes that a disputed term requires no construction it may err if the disputed term has several ordinary meanings or failing to construe the term

---

[23]     Tegal Corp., 257 F.3d at 1342; see also Vitronics Corp., 90 F.3d at 1584 n.6 (courts are free to consult dictionaries "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents"); Phillips, 415 F.3d at 1322-23.

[24]     U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

leaves the parties' dispute unresolved."[25] The Court would be committing error if it did not construe the term "upper frame assembly." The parties dispute the scope of the term. Kids II requests a narrower construction, contending it only encompasses the collection of parts making up the upper perimeter of the play pen. Seeking a broader construction, Graco opines that it encompasses every part of the frame assembly above a midway point. Thus, the Court must construe the term to resolve the parties' genuine dispute over the scope of the claim term.

The Court finds that the claim language and the specification indicate that Kids II's definition is more appropriate. Claim 1 defines the upper perimeter of the play pen by referencing the "upper frame assembly." Specifically, claim 1 provides "said changing table assembly including a changing table surface locatable within a perimeter defined by said upper frame assembly."[26] This claim language is repeated in two other claims.[27] Furthermore, the claim language employs the term "assembly" in regard to "upper frame." Because the '796 Patent does not provide a novel definition for the term "assembly," the Court finds that a person of ordinary skill in

---

[25] Kason Indus., Inc. v. Component Hardware Grp., Inc., 3:13-cv-12-TCB, 2014 WL 10588312, at *5 (N.D. Ga. January 31, 2014) (citing 02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1361 (Fed. Cir. 2008)).

[26] '796 Patent; 7:31-33.

[27] Id. at 10:31-34, 10:41-43.

the art would understand "assembly" in this context to mean a collection of parts that form a complete unit.[28]   Thus, the claim term "upper frame assembly" defines the upper perimeter of the invention and it forms a complete unit.

The specification reinforces this interpretation of the claim term. The specification states that the changing table surface is "supported slightly below the upper frame assembly of the play pen, and significantly higher than the floor of the bassinet assembly" so as to provide "a changing and dressing surface at a height convenient for those purposes."[29] This demonstrates the "upper frame assembly" serves as a perimeter at the top of the play pen. The specification also provides that the "upper frame assembly [is] comprised of two pair of parallel collapsible rail assemblies which are supported by corner leg assemblies."[30] Thus, the specification clarifies that the "upper frame assembly" is a complete unit of interconnected parts. Graco's proposed construction – that the "upper frame assembly" is any part of the frame above the midway point – runs counter to its own specification. Under that

---

[28]      See Kegel Co. v. AMF Bowling, 127 F.3d 1420, 1427 (Fed. Cir. 1997) ("When used in the context in which it appears in claim 7, 'assembly' ordinarily means a 'collection of parts so assembled as to form a complete machine, structure, or unit of a machine." (quoting Webster's Third New International Dictionary 131 (1986))); Safe Bed Techs. Co. v. KCI USA, Inc., No. 02 C 0097, 2004 WL 2044277, (N.D. Ill. Sept. 8, 2004) (same).

[29]      '796 Patent; 3:9-16.

[30]      Id. at 1:66-2:2.

construction, the changing table surface would be located at an inconvenient height for changing or dressing the child. In addition, the "assembly" would include only a portion of the vertical struts.[31] This is inconsistent with the plain meaning of the term "assembly," as the Court discussed above. As a result, the Court will construe "upper frame assembly" as "a collection of interconnected parts that define the upper perimeter of the play pen."[32]

**B. "[in] side-by-side relationship [to]"**

Kids II argues that the term "[in] side-by-side relationship [to]" is indefinite under 35 U.S.C. § 112 while Graco contends the term does not require construction. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art the scope of the invention."[33] The Supreme Court has

---

[31] At the Markman hearing, Graco argued that because the Cheng '570 patent, which claims the vertical leg as a part of the upper frame assembly, is fully incorporated by reference into the '796 Patent, its construction of "upper assembly frame" better reflects the inventor's intent. See [Doc. 102] at 7. But Graco's proposed construction does not include the complete vertical leg; it only includes a portion of the vertical leg. Thus, the Cheng '570 patent is not conclusive evidence in support of Graco's construction.

[32] The Court declines to substitute the term "playard" for "play pen." "Play pen" is the primary term used to describe the invention, and Kids II has failed to provide a reason as to why "playard" is more appropriate than "play pen."

[33] Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014).

emphasized three principles when evaluating indefiniteness: (1) that definiteness is to be determined by someone skilled in the relevant art; (2) that definiteness should be assessed in light of the patent's specification and prosecution history; and (3) that definiteness is measured at the time the patent was filed.[34]

Kids II contends the term is indefinite in the context of claims 1, 34, and 35 because the '796 Patent fails to define the scope of the term. Specifically, Kids II contends that the term does not define:

> (i) the distance, if any, between the bassinet assembly and the changing assembly that would fall within or outside the scope of this term;
> (ii) the different orientations . . . between the bassinet assembly and the changing table assembly that would fall within or outside the scope of this term;
> (iii) the extent to which an intervening object between the bassinet assembly and the changing table assembly would eliminate the "in side-by-side relationship to"; and
> (iv) the extent to which the height between the floor of the bassinet assembly and changing table surface may differ while still achieving the "in side-by-side relationship to."[35]

Kids II contends its argument is reinforced by a patent examiner who concluded that the metes and bounds of the claim term were unclear, making the claim term indefinite for the '796 Patent's parent application, the '690 patent. After the examiner rejected

---

[34]     Id. at 2128.

[35]     Kids II Opening Br., at 16.

the claim term, Graco canceled it. Thus, according to Kids II, "Graco should not have been permitted to recapture a claim that was previously found to be indefinite."[36]

Graco responds by contending that the term provides a person of ordinary skill in the art with reasonable certainty. At the Markman hearing, Graco pointed to Biosig Instruments, Inc. v. Nautilus, Inc.[37] in support of its argument. There, the term "spaced relationship" was used to describe the distance between the electrodes of a heart rate monitor.[38] The Federal Circuit found that the term "spaced relationship" was reasonably certain based on intrinsic evidence, including the claim language, specification, and figures.[39] The Federal Circuit noted that "the distance between the live electrode and the common electrode cannot be greater than the width of a user's hands because claim 1 requires the live and common electrodes to independently detect electrical signals at two distinct points of a hand."[40] Graco contends that, like the intrinsic evidence in Biosig, the intrinsic evidence here proves the claim term is reasonably certain. It points to the specification, which provides the bassinet and

---

[36]     Kids II Response Br., at 13.

[37]     783 F.3d 1374 (Fed. Cir. 2015).

[38]     Id. at 1379.

[39]     Id. at 1382-84.

[40]     Id. at 1383.

changing table are "directly adjacent," and to the claim language, which states the bassinet and changing table must be supported by the upper frame assembly.[41] Thus, according to Graco, the structural limitations here are more definite than in Biosig.

The Court agrees with the Defendant. The intrinsic evidence adequately demonstrates the metes and bounds of the claim term. The claim language provides that the changing table surface and the bassinet are both supported by the upper frame assembly.[42] Because the upper frame assembly defines the upper perimeter of the invention, the distance between the bassinet and the changing table surface is limited by the perimeter of the upper frame assembly. This is similar to the electrodes in Biosig, which were limited in distance by the confines of a hand. Moreover, by stating that the bassinet and changing table surface are "directly adjacent," the specification provides further evidence of the boundaries of the term.[43] Both Figures 1 and 2 in the specification reinforce the "directly adjacent" description by showing the limited distance between the bassinet and changing table.[44]

---

[41]     '796 Patent; 7:1-4, 27-34.

[42]     Id. at 7:27-34.

[43]     Id. at 7:1-4

[44]     Id. at 3:30-36.

The Court disagrees with Kids II that the prosecution history demonstrates the term is indefinite. First, Kids II's argument regarding the cancellation of the term fails to acknowledge that the cancellation was made without prejudice or disclaimer.[45] For a patentee to disclaim a term, he must have "unequivocally disavowed a certain meaning to obtain his patent."[46] Thus, by cancelling the term without prejudice, Graco has not unequivocally disavowed the term. Moreover, when Graco reintroduce the claim term in the instant patent, the patent examiner eventually came to understand the scope of the term. Examiner Fredrick Conley initially rejected the claim that contained the term "side-by-side relationship," finding it to be unpatentable over U.S. Patent No. 5,778,465 to Meyers.[47] However, Graco amended the claim so that the claim term provided the changing table assembly was locatable within the perimeter of the upper frame assembly.[48] Indeed, throughout the patent history, the term "side-by-side

---

[45]     Kids II Opening Br., Ex. 2, at 125.

[46]     Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003).

[47]     Kids II Opening Br., Ex. 3, at 104.

[48]     Id. at 126-27.

relationship" was used by the inventors to differentiate the prior art.[49] In the end, the Examiner did not reject the claim. Accordingly, the Court rejects Kids II's argument.

Even though the Court finds the term is reasonably certain, the parties' dispute over the scope of the term still must be resolved.[50] Thus, the Court will construe the term. Kids II proposed construction is "directly adjacent" while Graco's proposed construction is "adjacent" or "beside." The specification provides only one embodiment of the "side-by-side relationship" of the bassinet assembly and the changing table assembly. It states that "[t]he side-by-side relationship of the bassinet assembly 31 and the changing table assembly 32 facilitates convenient changing and dressing of a baby before and after naps, as the changing table surface is directly adjacent to the napping location."[51] This "directly adjacent" description is reinforced by a functional limitation of the patent. Specifically, the changing table assembly "is supported . . . at the other two corners by the adjacent hub adaptors of the bassinet

_____

[49]   Id. at 115, 126-27.

[50]   See Kason Indus., Inc. v. Component Hardware Grp., Inc., 3:13-cv-12-TCB, 2014 WL 10588312, at *5 (N.D. Ga. January 31, 2014) (citing 02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1361 (Fed. Cir. 2008)).

[51]   '796 Patent; 7:1-4.

assembly."[52] Thus, in order for the assemblies to be in a "side-by-side relationship," the hub adaptors must be used to support the changing table assembly.

In response, Graco states that qualifying "adjacent" with "directly" would improperly eliminate an embodiment of the '796 Patent. Graco points to language in the summary of the invention that states the "changing table assembly that is removably supported on a portion of the upper frame assembly adjacent to the bassinet assembly."[53] This argument is without merit. The language in the specification indicates that when it refers to an "adjacent" bassinet assembly, it is referencing the same embodiment that describes the "side-by-side relationship" as "directly adjacent." Indeed, the "directly adjacent" description in the preferred embodiment precedes the description that states the bassinet assembly is "adjacent" to the changing table assembly.[54] Graco then argues that "directly adjacent" would improperly read out the embodiments in claims 16 and 33. Graco states that "[t]he telescoping feature recited in Claims 16 and 33 allows the side assemblies to be adjustable, and would thus allow 'space' in the 'side-by-side relationship' of the bassinet and changing table."[55] But this

---

[52]      Id. at 3:5-8; see also id. at 7:7-9.

[53]      Id. at 2:43-46.

[54]      Id. at 7:1-10.

[55]      Graco Opening Br., at 17.

argument ignores the functional limitation discussed above. If the changing table assembly and the bassinet assembly are in a "side-by-side relationship," the changing table assembly must be "cooperatively supported by . . . the adjacent bassinet assembly."[56] The only way this occurs is if the two assemblies are "directly adjacent." Graco fails to point to any intrinsic evidence that supports its idea that space between the two assemblies is possible when both are supported on the upper frame assembly. Accordingly, the Court will construe the term "side-by-side relationship" to mean "directly adjacent."[57]

### C. "changing table surface"

The next dispute concerns the term "changing table surface." Graco contends that the term does not require construction because the term is used according to its plain and ordinary meaning and is non-scientific in nature. In the event the Court determines that construction is necessary, Graco seeks to define the term as the "outer or exterior surface of the changing table." Kids II seeks to define the term as the "surface on which the child is placed to change his/her diaper." According to Kids II,

---

[56]    '796 Patent; 7:7-10.

[57]    Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

the specification informs the meaning of the term and demonstrates that the changing table surface is used for dressing or changing the child. For example, Kids II points to language in the specification that states "the changing table assembly facilitates convenient changing and dressing of a baby before and after naps, as the changing surface is directly adjacent to the napping location."[58]

The Court agrees with Graco. There is no reason to deviate from the plain and ordinary meaning of the term "changing table surface."[59] The language in claim 1 of '796 provides sufficient context for interpreting the term: "said changing table assembly including a changing table surface locatable within a perimeter defined by said upper frame assembly."[60] In other words, the changing table surface is an outer surface of the changing table which may be located within the perimeter of the upper frame assembly. Further clarification of the term is unnecessary. In addition, Kids II's proposed construction is problematic. By insisting that the term include language regarding the placement of the baby while changing his/her diaper, Kids II

---

[58]   '796 Patent; 7:2-4.

[59]   Thorner v. Sony Computer Entm't America LLC, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("Claim terms must be given their plain and ordinary meaning to one of skill in the art.").

[60]   '796 Patent; 7:31-33.

impermissibly seeks to read functional limitations into the claim term.[61] The embodiments described in the specification do not restrict the function of the changing table surface to just changing a child's diaper. For example, one embodiment states that "the changing table assembly 32 facilitates convenient changing and dressing of a baby before and after naps, as the changing surface is directly adjacent to the napping location."[62] Thus, the changing table surface may have functions beyond changing a child's diaper. The Court rejects Kids II's construction and adopts the plain and ordinary meaning of the term "changing table surface."

### D. "span"

Finally, the parties dispute the meaning of the term "span." Like the previous claim terms, Graco insists that no construction is required. If the Court decides to construe the term, Graco proposes "span" to mean "connect at least two portions of." Kids II's proposed definition is "to cover the entire space between supports." The Court finds that construction is necessary for the claim term. As previously discussed, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term,

---

[61]     See Hill-Rom Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1371 (Fed. Cir. 2014 ("[W]e do not read limitations from the embodiments in the specification into the claims.").

[62]     '792 Patent; 7:1-4.

it is the court's duty to resolve it."[63] Because the parties dispute the scope of the term "span," the Court will construe the claim term. The Court finds that Graco's construction is more appropriate. The claim term "span" is used in claims 2 and 19, both of which state that "the changing table assembly includes a rectangular frame, and means for securing said changing table surface to span said rectangular frame."[64] When describing the preferred embodiment, however, the specification uses the term "span" in a broader fashion. The preferred embodiment provides that "[t]he outer end of each tube 72 is joined to a keyed elbow connector 76, and a lateral tube 77 is joined to the keyed elbow connectors 76 to span the sides of the play pen 21."[65] In other words, the tubes connect the two sides of the play pen, but do not "cover the entire space between supports." Thus, Kids II's proposed definition improperly restricts the claim term. Because the claims should at the very least encompass examples in the specification,

---

[63]      02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1362 (Fed. Cir. 2008).

[64]      '796 Patent; 7:35-38, 9:7-9.

[65]      Id. at 5:42-45

the Court finds that Graco's definition is more appropriate.[66] Accordingly, the Court

will construe "span" to mean "connect at least two portions of."

## IV. Conclusion

For the reasons set forth above, the Court construes the disputed terms as

follows:

| Term | Construction |
|---|---|
| "upper frame assembly" | "a collection of interconnected parts that define the upper perimeter of the play pen." |
| "[in] side-by-side relationship [to]" | "directly adjacent" |
| "changing table surface" | Plain and ordinary meaning |
| "span" | "connect at least two portions of" |

SO ORDERED, this 28 day of November, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[66]    See SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, moreover, is 'rarely, if ever, correct.'").