IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACO CHILDREN'S PRODUCTS INC.,

    Plaintiff,

      v.

KIDS II, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-1183-TWT

## OPINION AND ORDER

This is a patent infringement lawsuit. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 130] and the Plaintiff's Motion for Partial Summary Judgment [Doc. 133]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 130] is GRANTED in part and DENIED in part, and the Plaintiff's Motion for Partial Summary Judgment [Doc. 133] is DENIED.

## I. Background

The Plaintiff Graco Children's Products Inc. is a Delaware corporation that sells children's products, including playards and playpens for infants.[1] The Defendant Kids II, Inc. is a Georgia corporation that also sells children's

---

[1]    Def.'s Statement of Material Facts ¶¶ 3-4.

products, including playards and playpens for use with infants.[2]  The Plaintiff

is seeking to enforce its rights under a patent for an infant playpen. Specifically,

U.S. Patent No. 6,735,796 ("the '796 Patent") describes a combination folding

playpen with a bassinet and changing table that are removable.[3]

Robert J. Warner, Jr. and Richard Essex are the listed inventors on the

'796 Patent.[4] In the late 1990s, Warner and Essex were employed by Century

Products Company.[5] While at Century, Warner and Essex worked together on

a project to design a child's playpen.[6] On May 27, 1998, U.S. Patent Application

No. 09/085,690 was filed.[7] This application then issued as U.S. Patent No.

6,233,759 on May 22, 2001, listing Warner and Essex as the inventors.[8] In 1998,

the Plaintiff acquired Century.[9] The Plaintiff is listed as the assignee of this

patent.[10] Prior to the issuance of this patent, a "continuation application" was

---

[2]    *Id.* ¶¶ 1-2.

[3]    Pl.'s Statement of Material Facts ¶ 24.

[4]    *See* '796 Patent.

[5]    Pl.'s Statement of Material Facts ¶ 1.

[6]    *Id.* ¶ 4.

[7]    *Id.* ¶ 13.

[8]    *Id.*

[9]    *Id.*

[10]    *Id.*

filed to pursue additional claims.[11] On January 19, 2001, U.S. Patent Application No. 09/764,090 was filed.[12] This application included 46 claims.[13] In an Office Action dated August 15, 2001, the U.S. Patent and Trademark Office (the "PTO") found allowable subject matter in certain claims, but rejected other claims as anticipated by another patent.[14] In response to this, the applicants submitted a declaration under 37 C.F.R. § 1.131 stating that the rejected claims were patentable because they were conceived and reduced to practice before the effective date of the other patent.[15] In this response, the applicants also added three new claims (Claims 47-49).[16] New Claim 48 eventually became Claim 18 of the '796 Patent.[17] The PTO accepted the declaration, and after additional prosecution, issued a Notice of Allowance.[18] On May 18, 2004, the '796 Patent was issued.[19]

---

[11]     *Id.* ¶ 14.

[12]     *Id.*

[13]     *Id.* ¶ 15.

[14]     *Id.* ¶ 16.

[15]     *Id.* ¶ 17.

[16]     *Id.* ¶ 19.

[17]     *Id.* ¶ 20.

[18]     *Id.* ¶¶ 21-22.

[19]     *Id.* ¶ 23.

On April 10, 2013, the Plaintiff filed the Complaint. The Plaintiff contends that multiple products made by the Defendant (the "Accused Products") infringe the '796 Patent. The Accused Products fall into two categories, based upon how the bassinet[20] is supported on the playpen.[21] The first category, the "Generation One Products," directly supports the "Dream Centre" bassinet on the upper frame assembly side rails with four clamps.[22] In contrast, the second category, the "Generation Two Products," connects the "Dream Centre" bassinet to the playpen's vertical legs with two cantilevered tubes.[23] This distinction is important for the parties' infringement arguments.

On November 28, 2016, this Court issued a Claims Construction Order construing four disputed terms in the '796 Patent.[24] Following this Court's claims construction ruling, the Plaintiff narrowed its infringement contentions.[25]

---

[20]    The parties dispute whether the Defendant's "Dream Centre" is a "bassinet" within the meaning of the '796 Patent, which is discussed below.

[21]    Def.'s Statement of Material Facts ¶¶ 31-39.

[22]    *Id.* ¶ 32. The "Shiloh" playpen (Model No. 60072) is the only Accused Product in the Generation One Products category. *Id.* The "Shiloh" Model No. 60072 later adopted the design changes in the Generation Two Products, but retained the same model number. *Id.* ¶ 34. All of the other Accused Products are Generation Two Products. *Id.* ¶ 35.

[23]    *Id.* ¶¶ 33-35, 39. These products are also sometimes referred to by the parties as the "J-Tube" products, describing the shape of the cantilevered support tubes. *Id.* ¶ 54.

[24]    *See* Claims Construction Order [Doc. 106].

[25]    Def.'s Statement of Material Facts ¶ 15.

The Plaintiff contends that the Defendant infringes Claims 18, 19, 20, 31, and 32 of the '796 Patent.[26] Both parties now move for summary judgment. The Plaintiff moves for partial summary judgment, arguing that the Generation One Products infringe Claim 18 as a matter of law. The Defendant also moves for summary judgment, arguing that: (1) the Generation Two Products do not infringe Claim 18; (2) none of the Accused Products infringe Claims 19, 20, 31, and 32 because they do not meet the "rectangular frame" limitation; (3) none of the Accused Products infringe Claims 31 and 32 because they do not meet the "pair of tubes" limitation; and (4) summary judgment is appropriate as to damages.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[27] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[28] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material

---

[26]    *Id.* ¶ 16. Claim 18 is the only independent claim of the '796 Patent asserted against the Defendant. *Id.* ¶ 17.

[27]    FED. R. CIV. P. 56(a).

[28]    *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

fact.[29] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[30] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[31]

## III. Discussion

### A. Claim 18

Both parties move for summary judgment as to Claim 18. The Plaintiff argues that it is entitled to summary judgment as to infringement of Claim 18 by the Generation One Products. The Defendant argues that it is entitled to summary judgment as to non-infringement by the Generation Two Products. The Court addresses each of the parties' arguments in turn. Patent infringement analysis involves a two-step process. First, the claims of the patent must be construed as a matter of law. Second, the claims as construed must be compared to the accused product.[32] "Infringement is a question of fact."[33] "To prove infringement, the patentee must show that an accused product embodies all

---

[29]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[30]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[31]    *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

[32]    *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001).

[33]    *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013).

limitations of the claim either literally or by the doctrine of equivalents."[34] "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."[35]

## 1. Generation One Products

First, the Plaintiff moves for summary judgment as to infringement by the Defendant's Generation One Products. The Plaintiff argues that the Generation One Products literally infringe Claim 18, and that it is entitled to summary judgment as to the issue of infringement.[36] The Plaintiff bears the burden of proof as to the issue of infringement. Therefore, to succeed on a motion for summary judgment on the issue, it must show that no reasonable trier of fact could find non-infringement by the Defendant.[37] The Court concludes that the Plaintiff has not met this burden.

Claim 18 of the '796 Patent describes:

18. A play pen comprising:

      an upper frame assembly having a long axis;

---

[34]    *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013).

[35]    *Id.*

[36]    Pl.'s Mot. for Partial Summ. J., at 17.

[37]    *One 2007 Toyota FJ Cruiser, VIN JTEBU11F670023522*, 824 F. Supp. 2d 1369, 1376 (N.D. Ga. 2011) ("But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.").

a bassinet assembly removably supported on said
upper frame assembly, said bassinet assembly having
a long axis; and

a changing table assembly removably supported on said
upper frame assembly, said changing table assembly having
a long axis,

wherein the long axes of said bassinet assembly and said
changing table assembly are perpendicular to
the long axis of said upper frame assembly.[38]

The Plaintiff claims that there is no dispute of material fact that the Generation One Products, which support the "Dream Centre" sleeping station directly from the upper frame of the playpen, infringe Claim 18.

Two main issues are in dispute: first, whether the "Dream Centre" in the Accused Products is a "bassinet" within the meaning of Claim 18; second, whether the long axes of the Generation One Products' bassinet and changing table assemblies are perpendicular to the long axes of their upper frame assembly. However, as a preliminary matter, the parties first dispute whether the Defendant made binding concessions as to certain elements of Claim 18 in its Response to Infringement Contentions. Local Patent Rule 4.1 requires a party claiming patent infringement to provide the opposing party a Disclosure of Infringement Contentions, including, among other things, "[a] chart identifying specifically where each element of each asserted claim is found

---

[38]     '796 Patent, 8:63-97, 9:1-6.

within each Accused Instrumentality."[39] Likewise, the opposing party must provide a Response to Infringement Contentions, including a "chart responsive to the claims chart contained within the Disclosure of Infringement Contentions, and shall either acknowledge or deny whether each element of each asserted claim is found within each Accused Instrumentality."[40]

In its first Response to Initial Infringement Contentions, the Defendant stated it "acknowledges that the bassinet of the Accused Product is removably supported on the upper frame assembly."[41] Later, the Plaintiff served Supplemental Infringement Contentions upon the Defendant. These contentions related to Model 60212, a different model of playpens manufactured by the Defendant, which the Plaintiff believed to infringe the '796 Patent.[42] In its response to these contentions, the Defendant again admitted that the first model, Model 60072, includes a bassinet that is removably supported on the upper frame assembly.[43] Finally, the Plaintiff once again served another set of contentions, the Second Supplemental Infringement Contentions, dealing with three other models of playpens made by the Defendant that it had recently

---

[39]     N.D. Ga. Patent L.R. 4.1(b)(3).

[40]     *Id.* 4.2(a)(1).

[41]     Pl.'s Statement of Material Facts ¶ 83.

[42]     *Id.* ¶¶ 92-93.

[43]     *Id.* ¶ 94.

discovered.[44] The Defendant provided its Second Supplemental Response to Graco's Second Supplemental Infringement Contentions.[45] In this response, the Defendant for the first time denied that Model 60072 met the removable bassinet element of Claim 18.[46]

The Plaintiff argues that these responses are binding, and that the Defendant cannot withdraw its earlier concession that the Generation One Products meet this element.[47] The Defendant argues that it is not bound by this earlier contention because infringement contentions and responses only have the same binding effect as interrogatory responses, which "are not binding admissions and may be changed."[48] Furthermore, the Defendant argues that the amendment to its response was justified because it learned of new evidence during discovery establishing that its Dream Centre is not a "bassinet."[49]

The Court concludes that the Defendant is bound by these earlier concessions. Local Patent Rule 4.5(b) "provides that a party's disclosure of infringement contentions may 'be supplemented or amended pursuant to the

---

[44]     *Id.* ¶ 95. These models included Model 60282, Model 60286, and Model 60344.

[45]     *Id.* ¶ 97. The Defendant served this response on July 15, 2014, with two weeks of discovery remaining. *Id.*

[46]     *Id.* ¶ 98.

[47]     Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 23-25.

[48]     *Id.* at 19 n.11.

[49]     *Id.* at 19-20.

rules for supplementation and amendment of discovery responses generally provided for under the Federal Rules of Civil Procedure.'"[50] "Under the Federal Rules of Civil Procedure, '[a] party is under a duty seasonably to amend [its discovery responses] if the party learns that the response is in some material respect incomplete or incorrect . . . .'"[51] "The Local Patent Rules have been characterized as an 'exercise in forced door closing,' in the sense that they force the parties to take infringement and invalidity positions early in the litigation and stick to them."[52] "[T]hese requirements put the parties on notice early in the discovery process of the infringement and invalidity issues in the case. They also enable the parties to identify the claim terms in dispute so that the Court may construe only those terms which are relevant to the infringement and invalidity issues identified by the parties."[53] These rules "promote[] efficient discovery and reduces the potential for discovery disputes and wasted effort" and "discourage gamesmanship and tend to facilitate early resolution of the dispute."[54]

---

[50]     *Atleisure, Inc. v. Ace Evert Inc.*, No. 1:12-CV-1260-CAP, 2013 WL 12106174, at *2 (N.D. Ga. June 6, 2013) (quoting N.D. Ga. Patent L.R. 4.1(b)(3)).

[51]     *ChemFree Corp. v. J. Walter, Inc.*, 250 F.R.D. 570, 572 (N.D. Ga. 2007).

[52]     *McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 495 F. Supp. 2d 1329, 1332 (N.D. Ga. 2007).

[53]     *Id.*

[54]     *Id.*

The Defendant argues that it first learned of this potential defense concerning the "bassinet" element after the deposition of the Defendant's Engineering Manager, Chaitanya Tadipatri on June 3, 2014. On July 15, 2014, the Defendant served its Second Supplemental Response to Graco's Second Supplemental Infringement Contentions. Thus, the Defendant asserts that this amendment is justified due to the new evidence it discovered concerning the definition of "bassinet." However, the Defendant has not shown that it was diligent in finding this evidence supporting a potentially "dispositive" defense, or that it was diligent in amending its response to the infringement contentions. The Defendant argues that it first learned of this possible defense after the deposition of one of its own engineers. This was after a significant amount of discovery, approximately 8 months, had already occurred. The Defendant's failure to discover this allegedly "dispositive" defense from one of its *own* employees for nearly a year demonstrates that it was not diligent in making these early infringement contention responses. Furthermore, the Defendant still did not amend its response to the infringement contentions until July 15, over a month after the June 3 deposition of Tadipatri. This does not constitute a diligent effort to amend its infringement responses.[55]

---

[55] *Cf. Tillotson Corp. v. Shijiazhaung Hongray Plastic Products, Ltd.*, 244 F.R.D. 683, 690 (N.D. Ga. 2007) (finding that a plaintiff that supplemented its infringement contentions four days after discovering new evidence acted diligently).

Thus, the Court concludes that the Defendant is bound by its earlier responses admitting this claim element. "[A]llowing such tardy disclosures would go against the policy and purpose of the Patent Local Rules."[56] These rules "were adopted in order to 'facilitate the speedy, fair and efficient resolution of patent disputes.'"[57] "This purpose is undermined when parties are permitted to make initial 'place holder' disclosures regarding infringement or invalidity, then makes substantial changes or additions to those contentions immediately prior to or after the close of fact discovery."[58]

Therefore, only the final element of Claim 18 is in dispute. The parties disagree as to whether the Generation One Products contain the final element of Claim 18. This element states that "the long axes of said bassinet assembly and said changing table assembly are perpendicular to the long axis of said upper frame assembly."[59] The Plaintiff argues that the person of ordinary skill in the art would apply the "X-axis" and "Y-axis" coordinate system in this context. The Plaintiff contends that, applying that standard, the long axis of the upper frame assembly runs the length of the long side of the upper frame assembly, and the long axis of the bassinet assembly similarly runs along the

---

[56]    *ChemFree Corp. v. J. Walter, Inc.*, 250 F.R.D. 570, 573 (N.D. Ga. 2007).

[57]    *Id.* (quoting N.D. Ga. Patent L.R. 1.2(a)).

[58]    *Id.*

[59]    '796 Patent, 9:4-6.

long side of the bassinet assembly. Thus, according to the Plaintiff, the Accused Products meet this limitation. The Defendant argues that the "long axes" are the "corner-to-corner diagonals," not the long sides of these parts, and that the diagonals of the playpens and the changing tables in the Accused Products are not perpendicular to each other.[60] Thus, according to the Defendant, this limitation is not met.

The Court finds that an issue of material fact exists as to this question. Therefore, neither party is entitled to summary judgment on this issue. The Plaintiff offers the expert testimony of Dr. Robert Andres. In this testimony, Dr. Andres states a rectangle only has one "long axis," and that in the context of the Accused Products, that long axis is the long side of the upper frame assembly and the long sides of the bassinet and changing table.[61] In contrast, the Defendant offers the expert opinion of Dr. Singhose that the "long axes" of the Accused Products' upper frame assemblies, changing tables, and bassinets are the corner-to-corner diagonals.[62] The Plaintiff responds that an "axis" is distinct from a "diagonal," and that Claim 18 calls for a single "long axis," and not multiple long axes.[63] The Defendant's evidence, although more far-fetched than

---

[60]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 20-21.

[61]    Pl.'s Statement of Material Facts ¶¶ 111-26.

[62]    Def.'s Statement of Additional Material Facts ¶¶ 86-97; Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 20-21.

[63]    Pl.'s Mot. for Partial Summ. J., at 19-20.

the Plaintiff's evidence at first glance, is enough to create a question of fact for the jury to decide. The Defendant's arguments go to the weight of the Plaintiff's expert opinion, and are proper for a jury to consider. Therefore, the Plaintiff is not entitled to summary judgment as to infringement of Claim 18 by the Generation One Products.

### 2. Generation Two Products

Next, the Defendant argues that it is entitled to summary judgment as to non-infringement of Claim 18 by the Generation Two Products. The Generation Two playpens utilize cantilevered tubes to support the "Dream Centre" bassinet. With the Generation Two Products, the bassinet is supported on the playpen by cantilevered tubes that are attached to the vertical legs of the playpen, instead of being supported directly from the top frame of the playpen. The Plaintiff concedes that the Generation Two Products do not literally infringe any of the asserted claims.[64] Therefore, it must rely upon the doctrine of equivalents to assert infringement by these products.

"An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently."[65] "An element in the

---

[64] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 38-39.

[65] *Amgen Inc. v. Hoffman-La Roche, Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009) (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998)).

accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art."[66] "Insubstantiality may be determined by whether the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation."[67] And, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."[68] "It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."[69] "Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment."[70]

The central question for courts is "whether the substitution of one element for the other is a change of such substance as to make the doctrine of equivalents inapplicable; or conversely, whether under the circumstances the change was so insubstantial that" the application of the doctrine of equivalents

---

[66] *Id.*

[67] *Id.*

[68] *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

[69] *Id.*

[70] *Id.* at 39 n.8.

is justified.[71] In applying the doctrine, a court should consider a number of factors, including:

> What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.[72]

However, it is also important to remember that the doctrine of equivalents "necessarily adds uncertainty to the scope of patent claims, and thereby detracts from the public-notice function of patent claims and risks deterring non-infringing and potentially innovative endeavors."[73] "In recognition of this risk, and in an effort to strike the proper balance between protecting patentees while also providing sufficient notice to the public, various rules of law have emerged to constrain when and how the doctrine of equivalents is to be

---

[71]    *Id.* at 24 (internal quotations omitted).

[72]    *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950).

[73]    *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

applied."[74] One of these legal principles is the "all limitations" rule. This rule "holds that an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent."[75] There are two implications of this rule. "First, the all limitations rule requires that equivalence be assessed on a limitation-by-limitation basis, as opposed to from the perspective of the invention as a whole."[76] "Second, an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation."[77]

Here, a finding of equivalence is impermissible under the all-elements rule of *Warner-Jenkinson* because it would eliminate the "bassinet assembly removably supported on said upper frame assembly" limitation out of these claims.[78] "There is no set formula for determining whether a finding of equivalence would vitiate a claim limitation, and thereby violate the all

---

[74]     *Id.*

[75]     *Id.*

[76]     *Id.*; *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.").

[77]     *Freedman Seating Co.*, 420 F.3d at 1358.

[78]     *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (rejecting under the all-elements rule the conclusion that a conical-shaped part of an artificial hip socket and a hemispherical shaped part were equivalent because such a conclusion "would write the 'generally conical outer surface' limitation out of the claims").

limitations rule."[79] "Rather, courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless."[80]

For example, in *Freedman Seating Co. v. American Seating Co.*, the patent at issue described a stowable seat for use in public transportation.[81] The claimed product and the accused product used different support structures.[82] The claimed product contained a support member having a moveable end that was "slidably mounted" to the seatbase.[83] In contrast, the accused product contained a support member that was "rotatably" mounted, not slidably mounted, to the seatbase.[84] The Federal Circuit, after analyzing a number of cases applying the doctrine of equivalents, concluded that a finding of equivalent infringement would vitiate the "slidably mounted" limitation in the claim.[85] The court explained that the plaintiff's doctrine of equivalent argument "would mean that any support member capable of allowing translational and rotational

---

[79]    *Freedman Seating Co.*, 420 F.3d at 1359.

[80]    *Id.*

[81]    *Id.* at 1352.

[82]    *Id.* at 1354.

[83]    *Id.* at 1352.

[84]    *Id.* at 1355.

[85]    *Id.* at 1361.

motion would be equivalent to a support member 'slidably mounted to said seatbase,' which reads 'slidably mounted' completely out of the claims."[86] This, according to the court, "is the precise type of overextension of the doctrine of equivalents that the claim vitiation doctrine is intended to prevent."[87] The court also explained that the subject matter claimed in this patent involved "simple and well-known technologies," but the patentees nonetheless chose to limit their claims narrowly to the slide mechanism.[88]

Similarly, in *Sage Products, Inc. v. Devon Industries, Inc.*, the Federal Circuit rejected a plaintiff's doctrine of equivalents argument.[89] There, the asserted patent described a container for discarding syringes.[90] The patent claimed "an elongated slot at the top of the container body," and the accused product in that case had a slot located in the interior of the container rather than the top.[91] The Federal Circuit concluded that a finding of equivalent infringement would vitiate the "slot at the top of the container body"

---

[86]    *Id.* at 1362.

[87]    *Id.*

[88]    *Id.*

[89]    *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997).

[90]    *Id.* at 1422.

[91]    *Id.* at 1422-23.

limitation.[92] The court explained that it reached this conclusion due to the simplicity of the structure of the device and the narrowness of the claim.[93] The court explained that a "skilled patent drafter" would foresee the "limiting potential" of this "over said slot" limitation, and realize that such specificity would render the claimed invention to be narrow.[94] The court stated that "[i]f Sage desired broad patent protection for any container that performed a function similar to its claimed container, it could have sought claims with fewer structural encumbrances."[95]

Likewise, in this case, a finding of equivalence would entirely vitiate the "bassinet assembly removably supported on said upper frame assembly" limitation. It is not a "subtle difference in degree," but instead is a "substantial difference or difference in kind."[96] Like in *Freedman Seating Company* and *Sage Products*, the subject matter of the '796 Patent "involves relatively simple and well-known technologies."[97] The choice between supporting the bassinet on the

---

[92]     *See id.* at 1424-26.

[93]     *Id.*

[94]     *Id.* at 1425.

[95]     *Id.*

[96]     *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998); *see also Freedman Seating Co.*, 420 F.3d at 1361 (finding that the "structural difference" between a "slidably mounted" seat and a "rotatably mounted" seat "is not a 'subtle difference in degree,' but rather, 'a clear, substantial difference or difference in kind.'").

[97]     *Freedman Seating Co.*, 420 F.3d at 1362.

upper frame assembly or some other part of the playpen such as the vertical struts was not unforeseeable to the patentee. The use of cantilevered tubes was not the result of a technological breakthrough. Yet, the patentee still chose to limit the claim to a bassinet removably supported on the upper frame assembly. "Members of the public were therefore justified in relying on this specific language in assessing the bounds of the claim."[98] Concluding that bassinets removably supported from other parts of the playpen equivalently infringe Claim 18 (and its dependent claims) would "unjustly undermine the reasonable expectations of the public."[99]

And, unlike in *Hughes Aircraft Company v. United States*, there was no "subsequent change in the state of the art, such as later-developed technology" that "obfuscated the significance of the limitation at the time of its incorporation into the claim."[100] The patentee here could have sought claims with fewer structural requirements that would have provided broader patent protection, such as not requiring that the bassinet be connected to the upper frame assembly. Therefore, since a finding of infringement under the doctrine of

---

[98]     *Id.*

[99]     *Id.*; *see also Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997) ("[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure.").

[100]     *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998).

equivalents would vitiate the "removably supported on said upper frame assembly" limitation of the patent, the Defendant is entitled to summary judgment of non-infringement by the Generation Two Products.[101] And, since the Generation Two Products do not infringe Claim 18 as a matter of law, they also do not infringe the other claims that the Plaintiff asserts, since these are dependent claims.[102] Therefore, the Defendant is entitled to summary judgment of non-infringement as to the Generation Two Products for all of the claims asserted by the Plaintiff.

## B. Claims 19, 20, 31, and 32 – "Rectangular" Limitation

Next, the Defendant argues that both generations of the Accused Products do not meet the "rectangular frame" limitation of Claims 19, 20, 31, and 32, and therefore, it is entitled to summary judgment as to these claims. The Plaintiff argues that it is entitled to summary judgment as to infringement of these claims by Generation One Products.[103] Claim 19 describes a playpen "wherein the changing table assembly includes a rectangular frame, and means for

---

[101]     *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1421 (Fed. Cir. 1997).

[102]     *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed; hence Wahpeton's zeal for a determination of infringement of claims dependent on independent claims 14 and 21 is necessarily doomed by its failure to obtain the determination of infringement of those independent claims.").

[103]     Pl.'s Mot. for Partial Summ. J., at 28.

securing a changing table surface to span said rectangular frame."[104] Claims 20, 31, and 32 are dependent upon Claim 19.

The Defendant argues that the rectangular frame limitation is not met for two reasons. First, the Defendant argues that "rectangular" means the changing table frame must be an exact rectangle – two sets of opposing sides of equal length, where the sides are at right angles to one another.[105] Under such a view, the elbows of this frame must have exactly ninety degree angles. According to the Defendant, the Accused Products do not infringe these claims because the sides of their changing table frames are slightly curved and bowed outward – they are not an exact rectangle with ninety degree angles.[106] Second, the Defendant argues that a rectangular frame must be "planar," and that the changing tables of the Accused Products are not planar because they are three-dimensional.[107] The Plaintiff responds that a person of ordinary skill in the art would understand "rectangular" to mean that a frame is "substantially" rectangular in shape.[108] The Plaintiff asserts that "rectangular" is "conventional, and refers to a general shape – not a 'perfect rectangle.'"[109] Thus, under this

---

[104]    '796 Patent 9:7-9.

[105]    Def.'s Mot. for Summ. J., at 30-31.

[106]    *Id.* at 31.

[107]    *Id.* at 32-33.

[108]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 35.

[109]    *Id.*

"common sense" view, the changing table frames of the Accused Products meet this limitation because they are generally in the shape of a rectangle – even if they are slightly curved.[110] Further, the Plaintiff argues that the claim does not require a "planar" rectangular frame, and that such a requirement would improperly insert a limitation from a specification into the claim.[111]

The Court concludes that an issue of material fact exists as to this question. Therefore, neither party is entitled to summary judgment. Both the Plaintiff and the Defendant have offered evidence supporting their respective arguments. The Defendant argues that the plain meaning of "rectangular" means an exact rectangle, while the Plaintiff offers evidence that the person of ordinary skill in the art would read the term "rectangular" to be generally in the shape of a rectangle. Furthermore, the Defendant offered expert evidence supporting its argument that a rectangle must be "planar," while the Plaintiff offers a compelling argument that this contravenes the plain meaning of the term "rectangular." This presents an issue of material fact that a jury must resolve. Therefore, summary judgment for either party would be inappropriate.

## C. Claims 31 and 32 – Pairs of Tubes Limitation

Next, the Defendant moves for summary judgment as to Claims 31 and 32 based upon the pairs of tubes limitation. Claim 31, and the dependent Claim

---

[110]    *Id.*

[111]    Pl.'s Mot. for Partial Summ. J., at 29-30.

32, provide that the playpen's "rectangular frame includes a pair of lateral tubes joined to a pair of tubular side assemblies."[112] The Defendant argues that the Accused Products do not infringe Claims 31 and 32 because they do not have a pair of lateral tubes that are joined to a pair of tubular side assemblies. It contends that the Accused Products do not have two pairs of tubes at all, as these claims require. Instead, the changing table frames in the Accused Products only utilize one pair of C-shaped tubes that connect at each end.[113] The Plaintiff responds that Claims 31 and 32 only requires a single pair of tubes, that when joined, form a pair of tubular side assemblies. It contends that the claims do not require there to be four "joints," but instead only requires that tubes be "joined" and then form a pair of lateral and side tubes.[114]

The Court concludes that this claim limitation is not met as a matter of law. The plain language of Claims 31 and 32 clearly envisions two separate pairs of tubes – one pair of lateral tubes, and one pair of tubular side assemblies. Thus, the changing table frame in such a playpen would have 4 tubes total. In contrast, the Accused Products only contain 2 tubes (one pair) – two "C-shaped" tubes that form the frame. The Plaintiff's argument distorts the plain language of the claim. When the two tubes in the Accused Products are joined, they still

---

[112]    '796 Patent 10:13-15.

[113]    Def.'s Mot. for Summ. J., at 34.

[114]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 37.

do not create two *pairs* of tubes. They may create four sides of the frame – but that is not the same as two different pairs of tubes. Given the plain language of the claim, no reasonable jury could conclude that this claim limitation is met.

The Plaintiff then argues that, even if the changing table frame does not literally infringe, it still infringes under the doctrine of equivalents. However, this argument also fails. As discussed above, the doctrine of equivalents cannot be applied in a manner that would vitiate the limitations of a claim.[115] Concluding that the Accused Products equivalently infringe Claims 31 and 32 would do just that. Claims 31 and 32 specifically enumerate that the rectangular frame be composed of a pair of lateral side tubes joined to a pair of tubular side assemblies.[116] This is not a minor detail of Claim 31 – it is a main component of the structure described. This limitation, in fact, is the entirety of Claim 31 – Claim 31 is a dependent claim that adds this sole limitation to Claim 19. Thus, applying the doctrine of equivalents would vitiate the *entirety* of Claim 31. This is not a subtle difference in degree, but instead is a substantial difference. Furthermore, this also demonstrates that the patentees clearly envisioned that the rectangular frames could be structured in a different manner, but chose this specific structure in Claim 31. It would violate the reasonable expectations of the public for the Court to now expand these claims to include other structures.

---

[115]    *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

[116]    '796 Patent 10:13-15.

This and the fact that this is relatively simple technology weigh against applying the doctrine of equivalents. The patentees could have written these claims to encompass this type of design, and did not. Therefore, the Plaintiff's doctrine of equivalents argument also fails, and the Defendant is entitled to summary judgment as to Claims 31 and 32.

### D. Damages

Next, the Defendant moves for summary judgment as to damages. First, the Defendant argues that the Plaintiff should be precluded from recovering pre-suit damages. The Defendant argues that the Plaintiff failed to mark any of its patented products covered by the '796 Patent, and consequently it cannot recover damages for any time prior to April 10, 2013, the date that it commenced this action.[117] The Plaintiff concedes that it never sought pre-suit damages.[118] Therefore, the Plaintiff's potential recovery will not include pre-suit damages.

The Defendant also argues that the Plaintiff should not be able to recover damages at all if only one generation of the Defendant's products is ultimately found to infringe the '796 Patent.[119] According to the Defendant, the Plaintiff's damages expert, Carrie Distler, did not provide specific opinions as to damages for each generation of products. The Defendant contends that instead, Distler

---

[117]     Def.'s Mot. for Summ. J., at 36-37.

[118]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 39.

[119]     Def.'s Mot. for Summ. J., at 37.

only provided calculations for all of the Accused Products together, and did not disaggregate the calculations for the different generations. Therefore, according to the Defendant, the Plaintiff has not produced sufficient evidence to sustain a claim for damages from infringement by only one generation of the Accused Products. The Plaintiff does not dispute that Distler did not provide specific damages calculations as to each generation. Instead, the Plaintiff argues that: (1) it is still entitled by statute to a reasonable royalty for the use of the invention by the infringer; (2) determining the damages for only Generation One Products would be a simple mathematical exercise that the jury could perform; and (3) the Defendant's arguments are more appropriate for cross-examination, and not summary judgment, because they go to the weight of Distler's testimony.[120] The Court agrees.

First, the Plaintiff is still entitled by statute to recover a reasonable royalty. 35 U.S.C. § 284 provides in relevant part that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, *but in no event less than a reasonable royalty for the use made of the invention by the infringer*, together with interest and costs as fixed by the court."[121] "If a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported

---

[120]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 40-41.

[121]     35 U.S.C. § 284 (emphasis added).

by the record."[122] "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty."[123] "Indeed, if the record evidence does not fully support either party's royalty estimate, the fact finder must still determine what constitutes a reasonable royalty from the record evidence."[124] "[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather 'may [be] receive[d] . . . as an aid.'"[125] In such a case, the Court should award "such reasonable royalties as the record evidence will support."[126] Therefore, summary judgment would be inappropriate because the Plaintiff will still be entitled to some reasonable royalty amount, to

---

[122]     *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *see also Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) ("The district court's conclusion that no damages could be awarded, in light of the presumption of damages when infringement is proven, was in error."); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1327 (Fed. Cir. 1987) ("The requirement to determine actual damages is not diminished by difficulty of determination.").

[123]     *Dow Chem. Co.*, 341 F.3d at 1381.

[124]     *Apple Inc.*, 757 F.3d at 1328; *see also SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167-68 (Fed. Cir. 1991) ("[T]he factual determination of a reasonable royalty, however, need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party . . . . [T]he district court may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence.").

[125]     *Dow Chem. Co.*, 341 F.3d at 1382.

[126]     *Id.*; *see also Apple Inc.*, 757 F.3d at 1328 ("Certainly, if the patentee's proof is weak, the court is free to award a low, perhaps nominal, royalty, as long as that royalty is supported by the record.").

later be determined by the Court, if the Generation One Products are found to infringe.

Furthermore, the Defendant's expert, Daniel Cenatempo, demonstrates that Distler's calculations can be "corrected" to determine the damages attributable to the Generation One Products.[127] Cenatempo disagrees as to whether Distler "reliably established that Graco lost sales, had the capacity to make those sales, or the amount of profit that it would have earned."[128] However, he admits that Distler's calculations, if believed to be true and accurate, can be easily divided to show only damages for Generation One Products.[129] Cenatempo explains that "if I assumed that she was correct to assist the fact finder, then her total alleged damages for the accused Generation 1 products are $155,567."[130] If a jury were to believe Distler's calculations are accurate, then it would be simple to determine the damages attributable to the Generation One Products, as Cenatempo demonstrated. Therefore, Distler's expert opinion is not insufficient as a matter of law, and the Defendant is not entitled to summary judgment as to damages.

---

[127]     Expert Report of Daniel Cenatempo [Doc. 152-14] at 58.

[128]     *Id.*

[129]     *Id.*

[130]     *Id.*

Finally, the Defendant moves for summary judgment as to the Plaintiff's claim for lost profits, arguing that the Plaintiff's lost profit evidence should be excluded for the reasons presented in the Defendant's Motion to Exclude [Doc. 136]. This argument – which goes to the admissibility of the lost profits evidence, and not the parties' summary judgment motions – will be determined by the Court in relation to the Defendant's Motion to Exclude Lost Profits Evidence [Doc. 136].

### E. Invalidity

Finally, the Defendant argues that the '796 Patent is invalid. The Defendant argues that the '796 Patent is invalid as anticipated under 35 U.S.C. § 102, as obvious under 35 U.S.C. §103, and due to failure to identify the true inventors on the patent. A patent is presumed to be valid under 35 U.S.C. § 282.[131] Furthermore, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."[132] "[T]his presumption can only be overcome by clear and convincing evidence of facts to the contrary."[133] "Anticipation under 35 U.S.C. § 102 is a question of fact, while

---

[131]    35 U.S.C. § 282(a); *see also Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002).

[132]    35 U.S.C. § 282(a).

[133]    *Dana Corp.*, 279 F.3d at 1375.

obviousness under § 103 is a question of law based on underlying findings of fact."[134]

## 1. Infringement vs. Invalidity

First, the Plaintiff contends that the Defendant's invalidity argument is misplaced because infringement and invalidity are distinct legal issues. The Plaintiff emphasizes that its Motion for Partial Summary Judgment focuses on *infringement*, and that the validity of a patent does not affect whether it has been infringed.[135] Thus, according to the Plaintiff, the Court should not "reach" the issue of invalidity.[136] The Court acknowledges, as the Plaintiff insists, that infringement and validity are separate inquiries. Thus, an issue of material fact as to validity may not necessarily preclude summary judgment as to infringement. However, as outlined above, issues of material fact exist as to certain infringement issues, as well as to issues related to validity (which is discussed below). The Court will not fault the Defendant for including its invalidity arguments in its brief on this particular motion, instead of in its own Motion for Summary Judgment. Factual issues concerning both infringement and validity

---

[134]     *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015) (citing *Flo Healthcare Sols., LLC v. Kappos*, 697 F.3d 1367, 1375 (Fed. Cir. 2012)).

[135]     Pl.'s Reply Br., at 20.

[136]     *Id.* at 23.

will still need to be resolved by the fact finder. Therefore, the Court will address the Defendant's invalidity arguments.

## 2. Invalid as Anticipated

The Defendant first argues that the '796 Patent is invalid as anticipated. "A patent claim is anticipated if a single prior art reference expressly or inherently discloses every limitation of the claim."[137] "A patent claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference."[138] "Anticipation challenges under § 102 must focus only on the limitations actually recited in the claims."[139] Whether a prior art reference discloses a limitation is a question of fact.[140]

The Defendant argues that U.S. Patent No. 5,918,329, issued to Huang et al. (the "Huang Patent") anticipates the claims asserted by the Plaintiff.[141] The Huang Patent, titled "Foldable Bed Detachably Mounted onto a Crib" was

---

[137] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1252 (Fed. Cir. 2014).

[138] *SRI Int'l v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008) (quoting *Verdegaal Bros. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987)).

[139] *DDR Holdings*, 773 F.3d at 1252.

[140] *Id.*

[141] Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 26-27.

filed on December 9, 1997.[142] This precedes the filing date of the '796 Patent by 170 days.[143] The Huang Patent describes a bed and changing table that are detachably mounted onto a playpen.[144] The "main objective" of the Huang Patent is to provide a foldable bed which can be fitted onto a crib.[145] On May 27, 1998, Robert J. Warner, Jr. and Richard Essex, the original inventors of the '796 Patent, filed a patent application with the PTO.[146] During the prosecution of the '796 Patent, a PTO examiner determined that portions of the '796 Patent were anticipated by the Huang Patent.[147] In an Office Action dated August 15, 2001, the PTO found certain claims in the patent application allowable, but rejected then-pending claims 20-26, 28-29, 31, and 33-34 in Essex and Warner's application.[148] In response, Essex and Warner claimed that their invention was conceived and reduced to practice before the Huang Patent.[149] They submitted

---

[142]     Def.'s Statement of Additional Material Facts ¶ 152.

[143]     *Id.* ¶ 153.

[144]     *Id.* ¶ 154.

[145]     *Id.*

[146]     Pl.'s Statement of Material Facts ¶ 13.

[147]     Def.'s Statement of Additional Material Facts ¶ 241. The initial application for the '796 Patent was filed on May 27, 1998. *Id.* ¶ 250. The PTO issued the '796 Patent on May 18, 2004. Pl.'s Statement of Material Facts ¶ 24.

[148]     Pl.'s Statement of Material Facts ¶ 16; Pl.'s Response to Def.'s Statement of Additional Material Facts ¶ 241.

[149]     Def.'s Statement of Additional Material Facts ¶ 242.

a declaration under 37 C.F.R. § 1.131, where they declared that the claims in their application that were rejected as anticipated by the Huang Patent were nonetheless patentable because the invention was conceived and reduce to practice before the effective date of the Huang Patent.[150] Essex and Warner stated in their declaration that they had already developed and built a prototype of the playpen.[151] Furthermore, in this declaration, Essex and Warner added three new claims, including what would ultimately become Claim 18.[152] The PTO accepted the declaration on February 19, 2002, and the '796 Patent was issued on May 18, 2004.[153]

The Defendant now argues that a material issue of fact exists as to the effectiveness of the Plaintiff's "swear behind" of the presumptive date of the '796 Patent.[154] "Conception is the formation, in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice."[155] "A reduction to practice can be either a constructive reduction to practice, which occurs when a patent application is filed, or an

---

[150]     Pl.'s Statement of Material Facts ¶ 17.

[151]     *Id.* ¶ 18.

[152]     *Id.* ¶ 20.

[153]     *Id.* ¶¶ 21, 23.

[154]     Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 28.

[155]     *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998).

actual reduction to practice."[156] "In order to establish an actual reduction to practice, the inventor must prove that: (1) he constructed an embodiment or performed a process that met all the limitations of the interference count; and (2) he determined that the invention would work for its intended purpose."[157] "[I]n the context of establishing conception and reduction to practice for the purposes of establishing a priority date, the burden of production can shift from the patent challenger to the patentee."[158] "This is because a patent challenger has the burden of producing evidence to support a conclusion of unpatentability under § 102 or § 103, but a patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference."[159] This burden of production shifts "because the patentee affirmatively seeks to establish a proposition not relied on by the patent challenger and not a necessary predicate for the unpatentability claim asserted—effectively an affirmative defense."[160]

---

[156]    *Id.*

[157]    *Id.*

[158]    *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375 (Fed. Cir. 2016).

[159]    *Id.* at 1375-76.

[160]    *Id.* at 1376.

The Plaintiff responds that the PTO never cited the Huang Patent against Claim 18 or the other claims asserted in this action.[161] Instead, according to the Plaintiff, the inventors swore behind other claims that were initially rejected by the PTO – which are not at issue here.[162] The Court agrees. The Defendant has provided no evidence that the original applicants relied upon conception and reduction to practice to establish a prior effective date for the claims asserted in this action. The claims which Essex and Warner did swear behind (and which the PTO originally concluded to be anticipated by the Huang Patent) are not asserted by the Plaintiff in this action. Essex and Warner did not rely upon a prior effective date for Claim 18 and its dependent claims. Since the Plaintiff does not contend that its asserted claims are entitled to an earlier priority date, it does not bear the burden of proof on this issue. The Defendant, which does bear the heavy burden of proof, has failed to produce evidence that the claims asserted were anticipated by the Huang Patent. Consequently, its invalidity as anticipated argument fails.

### 3. Obviousness

Next, the Defendant argues that the '796 Patent is invalid as obvious. The Defendant contends that the '796 Patent claims a predictable combination of

---

[161]    Pl.'s Reply Br., at 24.

[162]    *Id.*

known prior art elements such that the claimed invention is obvious.[163] A patent is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."[164] The reason an obvious claim is invalid "is because its differences over the prior art are simply not sufficient to warrant a patent grant."[165] "The determination of obviousness under 35 U.S.C. § 103 is a legal conclusion based on underlying facts."[166] The Defendant is required to prove that the asserted claims are obvious by clear and convincing evidence.[167]

This underlying factual inquiry into obviousness is guided by the *Graham* factors, which include: (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations.[168]

---

[163]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 28-33.

[164]    35 U.S.C. § 103.

[165]    *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1363 (Fed. Cir. 2005).

[166]    *Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1290 (Fed. Cir. 2013)(citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)).

[167]    *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015).

[168]    *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010) (citing *Graham*, 383 U.S. at 17-18).

Furthermore, "[w]hen determining whether a patent claiming a combination of known elements would have been obvious, we 'must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.'"[169] This inquiry usually involves "considering the 'interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.'"[170]

The Court finds that this record presents a genuine issue of material fact as to whether the patent is invalid as obvious. The Plaintiff first argues that the combination of U.S. Patent No. 5,867,850 (the "Mariol '850"), U.S. Patent No. 5,553,336 (the "Mariol '336"), U.S. Patent No. 5,778,465 ("Myers"), and U.S. Patent No. 2,493,401 ("Gunter") renders the '796 Patent invalid as obvious. Mariol '850 provided that "Play yards and cribs often are utilized with bassinets which are adapted to be disposed over or hang from the play yard and crib."[171] Mariol '336 describes a rectangular playpen with a structure similar to an upper

---

[169]   *Id.*

[170]   *Id.* (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)).

[171]   Def.'s Statement of Additional Material Facts ¶ 174.

frame assembly.[172] Gunter describes a rectangular frame on a crib that can be used to change or dress a child.[173] A reasonable fact finder could find that this combination of prior art rendered the asserted claims in the '796 Patent obvious.

Furthermore, the Defendant also argues that the '796 Patent is invalid due to a second combination. According to the Defendant, a combination of U.S. Patent No. 5,845,349 ("Tharalson"), U.S. Patent No. 3,644,947 ("Padera"), and Mariol '336 also renders the '796 Patent obvious. According to the Defendant, Tharalson provides for a playpen that can be converted for use as a bassinet, changing table, and co-sleeper.[174] Furthermore, Padera provides for a device that facilitates changing an infant which attaches to the side railings of a crib.[175] Thus, according to the Plaintiff, these prior arts, along with Mariol '336, show that having a combination playpen, bassinet, and changing table was an obvious concept.[176]

The Plaintiff argues that none of these combination arguments are supported by evidence. The Plaintiff points out that these combinations are not mentioned in Dr. Singhose's invalidity reports.[177] Thus, according to the

---

[172]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 30.

[173]    Def.'s Statement of Additional Material Facts ¶ 199.

[174]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 32-33.

[175]    *Id.* at 33.

[176]    *Id.*

[177]    Pl.'s Reply Br., at 24.

Plaintiff, the Plaintiff falls far short of the clear and convincing standard to show that the '796 Patent is invalid. However, the Court finds a genuine issue of material fact exists as to the underlying factual findings for the obviousness inquiry. Even despite the lack of analysis by Dr. Singhose, a reasonable fact finder, applying the *Graham* factors, could conclude that these combinations are obvious, and thus render the patent invalid. Therefore, the Defendant's invalidity due to obviousness argument survives summary judgment.

### 4. Inventorship

Finally, the Defendant argues that the '796 Patent is invalid because it fails to identify the "true inventor."[178] "A patent is invalid if more or fewer than the true inventors are named."[179] "Because a patent is presumed valid under 35 U.S.C. § 282, there follows a presumption that the named inventors on a patent are the true and only inventors."[180] This is a heavy burden – exclusion of an actual inventor must be proven by clear and convincing evidence.[181] The Defendant argues that "the identity of the true inventors is murky" because marketing employees of Century Products Company (the original employer of

---

[178]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 40.

[179]    *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004).

[180]    *Id.*

[181]    *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998).

Warner and Essex) provided assistance in designing the playpen.[182] The Plaintiff responds that this argument falls far short of meeting the Defendant's burden on this issue.[183] According to the Plaintiff, this is mere speculation, which does not constitute clear and convincing evidence.[184] The Court agrees.

To prevail on this argument, the Defendant "must show, by clear and convincing evidence, that the unnamed but alleged co-inventor made a contribution to the conception of at least one claim of the patent 'that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.'"[185] "It is not enough under that standard if the alleged co-inventor 'merely explain[ed] to the real inventors well-known concepts and/or the current state of the art.'"[186] Instead, the party asserting invalidity must provide evidence of substantial contributions to the conception by the alleged co-inventors.[187] The Defendant has not produced evidence that an unnamed co-inventor made significant contributions to the conception of the claims in the '796 Patent, or what the degree of those supposed contributions

---

[182]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 40.

[183]    Pl.'s Reply Br., at 23.

[184]    *Id.*

[185]    *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, 708 F. App'x 654, 658 (Fed. Cir. 2017).

[186]    *Id.* (quoting *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001)).

[187]    *Acromed Corp.*, 253 F.3d at 1379.

were. The Defendant's vague references to potential co-inventors in the Century marketing teams come nowhere near rebutting the presumption that the named inventors are the only true inventors. Therefore, this argument fails as a matter of law.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 130] is GRANTED in part and DENIED in part, and the Plaintiff's Motion for Partial Summary Judgment [Doc. 133] is DENIED.

SO ORDERED, this 22 day of March, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge